GEORGE W. FORBES, PLAINTIFF IN ERROR, V. LOUIS THOMAS, DEFENDANT IN ERROR.

1. **Trial:** VERDICT. Where the testimony is conflicting and pretty evenly balanced, the finding of a trial jury thereon will not be disturbed even if the testimony seems to preponderate in favor of the losing party.

2. **Evidence** examined, and *Held*, To support the finding of fact necessary to support the verdict.

3. **Fraudulent Representations and Concealment:** EFFECT OF DISCHARGE IN BANKRUPTCY. Where A, being indebted to B in the sum of $10,000, procured C to execute to B a note and mortgage for $2,650, with the statement that B would furnish the $2,650 to C as a loan, the proceeds of such loan to be applied to the payment of a mortgage on the real estate included in the mortgage to B, amounting to over $1,200, and $900 thereof to be applied to the payment of a note for that amount, held by A against C and another, the remainder to be paid in cash to C, but A concealed from C all knowledge of his indebtedness to B, and instead of procuring the $2,650, procured only $1,000, and applied the $1,650 to the payment of his own indebtedness to B, without the knowledge or consent of C, and, at the time of making the contract, A was not the owner of the $900 note and could not deliver it to C, having transferred it to another long prior thereto as collateral to secure an unpaid debt : it was *Held*, That the concealment of the indebtedness of A to B, and the appropriation of the money thereon, and the concealment of the fact that the $900 note had been transferred and could not be delivered, were a fraud upon C, and created a liability which a discharge in bankruptcy, under the provisions of the bankrupt law of the United States then in force, could not affect.

4. ———: MEASURE OF DAMAGES. In such case the measure of C's damages in an action against A would be the $1,650 and legal interest thereon, notwithstanding the fact that by the increased mortgage liens on C's land he was unable to borrow sufficient to discharge them, and by subsequent foreclosure proceedings the land was sold and C's title destroyed.

5. ———: EVIDENCE: ERROR WITHOUT PREJUDICE. In such case the refusal of the trial court to permit A to testify that in the transaction he acted in good faith and intended to surrender

the notes, and believed he could do so, if error at all, would be without prejudice, the notes never having been surrendered or tendered.

6. **Error without prejudice** will not require the reversal of a judgment.

7. **Limitation of Action.** The cause of action accrued in 1875. In 1877, plaintiff in error, who was in business in O., in this state, changed his place of business to D., in Dakota territory. From that time until 1880 his family remained in O., when his wife joined him in Dakota, and remained there about four months. In 1881 his family all joined him in Dakota. The principal part of the time from 1877 until 1881 his family resided in the place occupied by him previous to his departure. He occasionally visited O., but did not make that his usual place of abode. *Held,* That these facts, together with other circumstances and testimony submitted to the jury, were sufficient to sustain the finding that his "usual place of residence" was not in O., and that the statute of limitations did not run in his favor.

ERROR to the district court for Douglas county. Tried below before NEVILLE, J.

*George W. Doane,* for plaintiff in error, upon the question of the effect of the discharge in bankruptcy, cited: *Cronan v. Cotting,* 104 Mass., 245. *Seymour v. Street,* 5 Neb., 93. On statute of limitations. *Blodgett v. Utley,* 4 Neb., 25. *Hedges v. Roach,* 16 Id., 673. *Sage v. Hawley,* 16 Conn., 106. *Campbell v. White,* 22 Mich., 193. *Gilman v. Cutts,* 3 Foster, 376.

*Henry D. Estabrook,* on same side, upon question of fraud, cited: *Commonwealth v. Brenneman,* 1 Rawle, 311. *Miller v. Howell,* 2 Ill., 499. *Perkins v. Lougee,* 6 Neb., 220. *Fisher v. N. Y. Com. Pleas,* 18 Wend., 608. On question of discharge in bankruptcy. *Zeperink v. Card,* 11 Fed. Rep., 295. *Hennequin v. Clews,* 111 U. S., 676. *Neal v. Clark,* 95 Id., 704. On measure of damages. *Barmon v. Lithauer,* 4 Keyes, 317. Sutherland, 190. *Freeman v. Venner,* 120 Mass., 424.

*John L. Webster*, for defendant in error, on question of discharge in bankruptcy, cited: *Neal v. Clark*, 95 U. S., 704. *Strang v. Bradner*, 114 Id., 555. *Brown v. Broach*, 52 Miss., 536. *Jones v. Clark*, 25 Gratt., 642. *Stokes v. Mason*, 10 Rhode Island, 261. Statute of limitations. *Seymour v. Street*, 5 Neb., 88. *Conrad v. Nall*, 24 Mich., 275. *Lane v. National Bank*, 6 Kan., 74.

REESE, J.

This action was instituted in the district court of Douglas county, by defendant in error against plaintiff in error, by which he sought to recover the sum of $10,000 damages resulting from fraudulent representations and conduct of plaintiff in error. The cause of action stated in his petition is, that on the 23d day of April in the year 1875, he was the owner in fee simple of the west half of section fifteen, township sixteen, range twelve, in Douglas county, Nebraska, and that at said date there was a mortgage on the premises to one Barker, in the sum of $1,200 and interest from April 8th in the year 1872, all of which was then due and payable; that defendant in error, being desirous of paying off said mortgage to Barker, applied to plaintiff in error for a loan of $2,650, to be secured by a mortgage on the real estate; that plaintiff in error was then indebted to one William Vorse in a large sum of money, which he concealed from defendant in error, and which was unknown to him, and to enable the plaintiff in error to cancel a part of his own indebtedness to Vorse procured defendant in error to execute a note to Vorse in the said sum of $2,650, bearing date August 23d, 1875, payable five years after date, and to secure the same to execute a mortgage on the real estate above described to Vorse, fraudulently representing to defendant in error that Vorse was advancing on said note and mortgage the full amount thereof; that plaintiff in error fraudulently represented to defendant in

error that he would procure the $2,650, and out of that money pay and cause to be canceled the mortgage to Barker, and would surrender certain evidences of indebtedness that plaintiff in error held against defendant in error and one John Thomas, and would pay defendant in error the sum of $1,000 in cash; but that after obtaining the mortgage and note he fraudulently delivered the same to Vorse in payment of $2,650 of the indebtedness of plaintiff in error to Vorse, and did not pay to defendant in error the $1,000 in cash, nor cancel the mortgage to Barker, nor surrender the evidences of indebtedness held against the defendant in error, but paid Barker the sum of $785, and paid taxes on the land amounting to $215, which was all that defendant in error received from plaintiff in error for the note and mortgage of $2,650.

It is alleged that defendant in error was, at the time, poor, financially, and was himself unable to pay his incumbrance on the land, and by reason of the mortgage to Vorse so fraudulently obtained by plaintiff in error, he was prevented from borrowing money on the land, and that the same was lost to him by the foreclosure of the Barker and Vorse mortgages; that in addition to the loss of the real estate a judgment had been rendered against him for the sum of $2,500 as a deficiency remaining after the sale of the mortgaged property; that the value of the real estate was $8,000. It is also alleged that plaintiff in error has been absent from the state for more than five years, and that he has not been within the state four years since the date of obtaining the mortgage.

Plaintiff in error, by his answer, admits the execution of the mortgage to Vorse and the existence of the mortgage to Barker, as alleged in the petition, but denies that defendant in error applied to him for a loan of money for the purpose of paying off the Barker mortgage, but alleges that defendant in error and one John Thomas, his brother, were at the time of the execution of the Vorse

mortgage indebted to him in the sum of $1,650; that defendant in error well knew the plaintiff in error was indebted to Vorse, and that plaintiff in error applied to defendant in error and John Thomas, either to pay him the amount of their indebtedness or secure the same in such manner as to enable him to use it in paying a part of his indebtedness to Vorse, and it was mutually agreed between them that defendant in error should execute the mortgage on the real estate, as he did do; that $1,000 in money should be paid to him for the purpose of reducing the liens thereon, and that they should be afterwards paid by defendant in error; that by the execution of the $2,650 mortgage, defendant in error and John Thomas paid to plaintiff in error the said sum of $1,650 due him from them, and received the benefit of $1,000 paid upon his inindebtedness to Barker, and the taxes due upon the land. All allegations of fraud or concealment are specifically denied. It is admitted that he did not surrender the evidences of indebtedness held by him against the defendant in error and John Thomas, but it is alleged that they have never paid any part of such indebtedness, and have suffered no damage by reason of his failure to surrender them. It is admitted that the Barker and Vorse mortgages were foreclosed, and the land sold as alleged in the petition of defendant in error, but it is alleged that he suffered no damage thereby, as he had sold and transferred the land prior to the commencement of the foreclosure proceedings, and had no interest therein. The absence of plaintiff in error from the state is denied, and it is alleged that from the time of the execution of the mortgage to Vorse until in April, 1881, plaintiff in error had continuously been a resident of the state of Nebraska and of the city of Omaha, and that while he was temporarily absent a part of the time, his home was in Omaha, where his family resided, and that during all the said time service of summons could have been made upon him as required by law in civil ac-

tions.   It is alleged that since the date of the execution of
the Vorse mortgage, certain proceedings in bankruptcy
had been instituted in the district court of the United
States, against plaintiff in error, which resulted in his dis-
charge from all his indebtedness, and especially from the
alleged indebtedness to defendant in error, on the 25th day
of April, 1879.

Defendant in error, by his reply, denies the indebtedness
of himself and John Thomas to plaintiff in error, in the
sum of $1,650, or any other amount, but alleges that
plaintiff in error had held certain evidences of indebtedness
of John Thomas, the amount of which is not known by de-
fendant in error, but that at the time of said transaction
plaintiff in error was not the owner thereof, but had trans-
ferred them to a *bona fide* purchaser for value, and that the
said evidences of indebtedness were not surrendered either
to defendant in error or John Thomas by plaintiff in error,
but were still outstanding and subsisting evidences of debt
against them; that at the time of the execution of the
mortgage, plaintiff in error knew that he was not the
owner and holder thereof, but had long prior thereto trans-
ferred the same.   It is denied that the Vorse mortgage
was executed for the purpose of securing any part of the
said indebtedness.   All knowledge of the indebtedness of
plaintiff in error to Vorse at the time of the execution of
the mortgage is denied, but it is alleged that the mortgage
was executed to Vorse on the representation of plaintiff in
error that Vorse would advance to plaintiff in error the
full amount thereof.   It is denied that the mortgage was
given for the purpose of or with the intention of applying
any part thereof on the indebtedness of the plaintiff in error
to Vorse.

There was a jury trial, which resulted in a verdict in
favor of defendant in error for the sum of $3,229.80.   A
motion for a new trial was made and overruled, and judg-
ment rendered on the verdict.

The first contention of plaintiff in error is, that the verdict is not supported by the testimony. Upon this part of the case it must be sufficient to say that we have carefully read all the evidence submitted to the trial jury, and find the same conflicting in almost every material feature of the case. If the testimony of plaintiff and his witnesses was correct, a verdict might well have been rendered in his favor; but if the testimony of defendant in error and his witnesses is the correct version of the case we cannot see that these facts would not support the verdict. Of this the trial jury was the sole judge, and, so far as their finding of fact is concerned, upon the testimony thus conflicting, it must be taken as final. The question that then presents itself is, will the facts as testified to by defendant in error and his witnesses, supported as they are by circumstances entitled to more or less weight, sustain the verdict?

This testimony may be briefly said to. be, that prior to the execution of the Vorse mortgage, defendant in error, being unable to pay the Barker mortgage, applied to plaintiff in error for a loan of $2,650, a part of which was to be applied to the payment of the Barker mortgage of $1,200 and interest, and part to the payment of the note held by plaintiff in error against defendant in error and John Thomas, the remainder to be paid to defendant in money; that at the time plaintiff in error was indebted to Vorse in the sum of $10,000 or upwards, but that he concealed the knowledge of this indebtedness from defendant in error and without his knowledge or consent applied the $1,650 on its payment, promising to turn over the note of the Thomases for about $900, but at the time he made this promise the note was in the bank pledged as collateral security for his indebtedness, and was not subject to his control; that soon after the mortgage was delivered to Vorse he received from Vorse for defendant in error $1,000, which was applied upon the payment of the taxes and the Barker mortgage, promising defendant in error that

the remainder would be soon received and paid over to him. Defendant in error made frequent demands for the remainder of the money, but never received it. Upon the maturing of the first interest on this $2,650 note, defendant in error received a letter from Vorse calling for its payment. He notified plaintiff in error of the fact, and proposed writing to Vorse directing him to retain the interest out of the $1,650 not yet paid, and send him the balance. This, plaintiff in error requested him not to do, but simply to write that he would send the interest in a short time, promising that he would furnish the $1,600, not yet received, but stating to defendant in error, in substance, that he did not desire Vorse to know that the money had not all been paid. About two years after the execution of the mortgage, when Thomas became satisfied he would never receive the $1,650, plaintiff in error offered to turn over to him the indebtedness of himself and his brother, John Thomas, in the form of notes and accounts, which defendant in error finally agreed to take; but that these notes had also been transferred by plaintiff in error and were not subject to his control, and were never delivered. Soon after the execution of the mortgage, plaintiff in error instructed defendant in error to go to the bank and call for the note upon himself and John Thomas, which it had originally been agreed he should have, but upon calling for it at the bank, delivery was refused. He afterwards executed an order to defendant in error, in writing, which upon presentation was refused and the bank retained the note. Some of the notes were afterwards sued upon by the bank and judgments were rendered against the Thomases, and, although not paid, these judgments are unsatisfied and remain valid as against them.

It is true that upon the trial plaintiff in error stated upon the witness stand that he was ready to deliver over the note in accordance with his first agreement, which note was produced upon the trial for defendant in error,

but it was subsequently shown that this note was still the property of the bank, held by it as collateral security, and that plaintiff in error had no control over it and could not have delivered it to defendant in error had he consented to receive it.

If these facts were true, and of that the jury was the sole judge, it cannot be questioned that at the time that plaintiff in error promised to surrender the note for $900 he well knew his inability to do so, and that he had no control over it. He must have known, and did know, that Vorse was only to pay the $1,000 and apply the $1,650 upon his own indebtedness. If he concealed from defendant in error the fact of this indebtedness and the intention of applying the $1,650 thereon, and the further fact that the note which he agreed to surrender was not his property and that he could not surrender it, these facts would clearly establish fraud upon his part, and upon its discovery he would be liable to defendant in error for the damages sustained by reason of such fraud, which would be the $1,650 and its interest.

The question of the measure of damages was properly decided by the trial court in its fifth instruction given to the jury, which was as follows: "You are instructed that the plaintiff having transferred to one Wiltsie all his right and title to the farm in question before the commencement of the foreclosure proceedings, plaintiff cannot recover damages for loss of title and interest in said farm by reason of said foreclosure proceedings;" and by the eighth instruction, which was as follows: "Should you be satisfied from the proofs there was a liability from defendant to plaintiff, created by the Vorse mortgage transaction, and that the same has not been satisfied, and that such liability was established by the fraud of defendant, and that the statute of limitation has not run, then you should allow plaintiff the amount of such claim against the defendant with interest at twelve per cent to March 3, 1880, from the date

of the Vorse mortgage transaction, and seven per cent from that date until the first day of this term."

By these instructions all questions of damage resulting from the loss of the farm are eliminated from the case and need not be further noticed.

The jury having found that the indebtedness was created by the fraudulent acts of plaintiff in error, we see no reason why the verdict should, on that account, be molested.

It is next insisted that the court erred in the admission of testimony tending to prove that after the execution of the Vorse mortgage, and prior to the foreclosure thereof, he made an effort to borrow money for the purpose of paying off the Vorse mortgage, but could not do so owing to the extent of the liens against it, and that by the foreclosure he lost the land. If there was error in the admission of this testimony it was clearly without prejudice, for the reason that this whole question was virtually withdrawn from the jury by the instruction numbered five, above quoted.

The next objection to the ruling of the court in the admission of testimony is, that the court erred in sustaining the objection of plaintiff in error to the following question : " At the time you made this transaction with Mr. Thomas did you in good faith intend to surrender the notes to him?" And again : " State whether or not at the time you made this transaction with the plaintiff you believed that you could, and intended to deliver the notes, to which you have referred, to Louis Thomas, in good faith ?"

It is said by plaintiff that, " The gravamen of this action is the intent of Forbes to defraud Thomas, and that the right to recover rests upon the allegation in the petition that Forbes designed and contrived to defraud Thomas." While this is to some extent true, yet it could hardly be said that plaintiff in error intended otherwise than what would naturally result from his own acts. It would be a reproach upon his intelligence to say that if he concealed

his indebtedness to Vorse, and applied the mortgage to the extent of $1,650 upon its payment without the knowledge or consent of defendant in error, and also concealed the fact that the notes referred to in the testimony had been transferred by him, and could not be delivered, that he did not know, and in fact had not intended to comply with his contract; his good or bad faith must be decided by what he did and not by what he intended. It may be, and is, doubtless, true that in some instances the question as to intent, when propounded as the question was, would be proper and competent; but there is nothing in this case which would call for the answering of this question. If the jury believed from the testimony, as they doubtless did, that plaintiff in error had knowingly and intentionally made the representations which defendant in error says he made, and that they were false, then the question of intent must be answered from his actions and not from what he now says was his purpose.

The ruling of the court in the admission of certain mechanics' liens against the property of plaintiff in error is also assigned for error. It is quite difficult to see upon what theory these liens could be admitted. The witnesses for plaintiff in error testified that upon a certain occasion, in a certain brick house of plaintiff in error, a conversation was had between the parties to the action, by which it was agreed that the $1,000 was all the money to which defendant in error was entitled from the Vorse mortgage. The mechanics' liens were introduced for the purpose of showing the construction of the house after the date of the alleged conversation. We can readily see how it would have been entirely competent to prove the fact sought to be established by the introduction of the liens, but it is difficult to see how the papers were competent to prove that fact. However, it seems to us that the testimony sought to be counteracted by the introduction of the liens was not material to the merits of the case for the reason

that if the conversation had occurred at the time and place as testified to by the witnesses for plaintiff in error, all that could be claimed for it would be that the Vorse note and mortgage were procured upon the promise of plaintiff in error to surrender notes against defendant in error, which he had no authority or power to do, the notes at that time being out of his hands. It could make no difference, therefore, whether the contract in that behalf was as claimed by plaintiff in error or as claimed by defendant in error. No prejudice could result to plaintiff in error by the introduction of the mechanics' liens, and if the decision of the court was even erroneous it would not call for the reversal of the judgment.

The next question presented by plaintiff in error is the alleged errors of the court in the instructions given to the jury, and those asked by plaintiff in error and refused. Plaintiff in error requested the court to give as his first instruction the following: "The jury are instructed that the claim for damages in this action, based on the foreclosure proceedings referred to in the amended petition, and the sale of the land therein described under the decree rendered in such foreclosure proceedings, cannot be sustained, and the jury will dismiss from their consideration the question of damages based on such claim."

This instruction was refused, and plaintiff in error excepted to the ruling of the court.

All that can be claimed for this instruction was given in instruction number five, upon the court's own motion, which we have hereinbefore copied, and need not reproduce it. Although couched in defendant's own language, the sum of both instructions is, that defendant in error could not recover damages for loss of his title to the farm by reason of the foreclosure proceedings. The verdict also shows that no such damages were given by the jury.

It is objected that the fifth instruction given by the court was defective because the reason assigned was the transfer,

by Thomas, to Wiltsie of the title of the land. We cannot conceive that this would make any difference. The legal proposition given to the jury was, that the plaintiff in the action could not recover upon that branch of the case. " The character of the instruction will not be held erroneous because an improper reason for it is given." *Marion v. State*, 20 Neb., 233.

It is next contended that the claim of plaintiff in error is barred by the statute of limitations. Section 12 of the civil code provides that actions for relief on the ground of fraud may be commenced within four years after the discovery of the fraud. The transaction of which complaint is made occurred in 1875, and the suit was instituted in 1883—more than four years intervening. But it is alleged in the petition that plaintiff in error has been absent from the state for more than five years, and that he has not been within the state four years since the date of obtaining the note and mortgage out of which the claim of defendant in error arises. This allegation is denied by the answer, and it is alleged on the part of plaintiff in error that during all of the time from the date upon which the mortgage was made until in the year 1881, plaintiff in error and his family had their residence and domicile in the city of Omaha, and that during all of said time service of summons could have been made upon him in the manner provided by law.

Section 20 of the civil code provides that, " If when a cause of action accrues against a person he be out of the state, or shall have absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he come into the state, or while he is absconded or concealed; and if, after the cause of action accrues, he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as a part of the period within which the action must be brought."

Section 69 provides that, "Service shall be by delivering a copy of the summons to the defendant personally, or by leaving one at his usual place of residence at any time before the return day."

It appears from the evidence that in 1877 plaintiff in error changed his place of business from Nebraska to Dakota Territory—his principal place of business being in Deadwood. From that time until in the year 1881 his family remained in Omaha, living a part of the time in the residence property which was occupied by him and his family prior to his departure. In 1880 his wife went to Dakota, and remained with him four months. During the time of her absence the house was rented, and the tenant · remained in it for some time after her return. During the time intervening between the departure of plaintiff in error in 1877 and the removal of his family in 1881, he was not in Omaha except for temporary purposes. He was frequently in Ogallala, in this state, for purpose of purchasing and driving cattle to Dakota, where he sold them. His business location was in that territory, and he was doing no business in Omaha. In 1881 his family joined him in Dakota, where they all remained until about the time of the commencement of this suit, when they all removed back to Omaha. It thus appears that plaintiff in error was absent from the state a great portion of the time, and from his family in Omaha substantially all of the time, until the final removal of his family to Dakota, where he was. These facts would lead to the conclusion that his " usual place residence " was not in Omaha. The words " usual place of residence " mean the place of abode. *Seymour v. Street*, 5 Neb., 85. We cannot see how it could be said, even upon the testimony of plaintiff in error, that · his *usual* place of residence was in this state. The fact that his family remained in this state would not necessarily make it such, when it is not made to appear that during any of the time of his absence he had any intention to re-

sume his residence in Omaha. See *Blodgett v. Uttley*, 4 Neb., 25. But there was other testimony upon the question of residence which would sustain the verdict of the jury, even though the testimony of plaintiff in error and his witnesses had been different from what it was. James P. Haynes testified in substance that he was acquainted with plaintiff in error and his family, and that they moved to the Black Hills in 1878. George Thomas testified that he was ac-. quainted with him, and that he knew him in Dakota in 1878, where he was engaged in the commission business in Deadwood, and that he had been there ever since, and had not lived in Omaha since that time to his knowledge. J. N. Phillips saw him in business in Deadwood in 1877 and 1878, and did not know of his returning to Omaha except occasionally. If the jury believed the testimony of these witnesses, this would sustain their verdict.

The last question presented is upon the refusal of the court to instruct the jury that the action was barred by the discharge of plaintiff in error under the proceedings in bankruptcy.

Plaintiff in error requested the following instruction, which the court refused to give: "The jury are instructed that the certificate of discharge in bankruptcy of the defendant Forbes, which was offered in evidence, covers the claim sued upon in this action, and that the defendant is thereby discharged from all liability to the plaintiff thereunder, and your verdict will therefore be for the defendant."

The provisions of the law of congress, commonly known as the bankrupt law, in force at the time of the alleged discharge and by which it is claimed by defendant in error that this action was excepted from the provisions of the discharge, is as follows: "No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy, but the

debt may be proved and a dividend thereon shall be a payment on account of such debt." Sec. 5117, Revised Statutes U. S., 1878.

It will be perceived that had the court given the instruction prayed for he would virtually have withdrawn from the jury the whole question of fraud, which he had no authority to do. The court did instruct the jury as follows: "If the claim of plaintiff was not created by the fraud of Forbes, practiced upon plaintiff, then plaintiff can recover no sum whatever, as in that case Mr. Forbes would be discharged from any liability by virtue of his discharge in bankruptcy; but on the contrary, if you shall be satisfied from the proofs that any claim which plaintiff may have against Forbes in the Vorse mortgage transaction was one based on the intentional fraud of Forbes upon Thomas, then plaintiff should recover, notwithstanding defendant's discharge as a bankrupt."

This instruction we think very properly submitted the question to the jury to be determined on their finding of the fact, and as to the fraudulent transaction of plaintiff in error. If he was guilty of no fraud the action was barred by the proceedings in bankruptcy. If the claim was created by fraud practiced upon defendant in error, it was not barred. Had the jury found there was no fraud they would have been required by this instruction of the court, to find for plaintiff in error. This submitted the whole question to them, and the instruction given was proper.

We find no error in the case which would call for a reversal of the judgment. It is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.