(21 App. Div. 409.)

### BENNETT et al. v. WATSON.

(Supreme Court, Appellate Division, First Department. October 22, 1897.)

1. LIMITATION OF ACTIONS—NONRESIDENCE—WHAT CONSTITUTES.
   In December, 1889, a New York debtor gave up his house, stored his furniture, and went to Florida for the recovery of his son's health. He returned in April, 1890, remained a little over a month at an hotel, and then went to Europe for the same purpose, finally returning to New York in June, 1893. *Held* that, although he may have been continuously "domiciled" in New York, he "resided" without the state during such absences, within Code Civ. Proc. § 401, and hence they were not a part of the time limited for suing on the debt.

2. SAME—COMMENCEMENT OF ACTION—JOINT DEBTORS.
   An action on partnership demand against the individual members is commenced by service of summons on only one defendant, under Code Civ. Proc. § 398, providing that an action is commenced, within the statute of limitations, when the summons is served on defendant, "or on a co-defendant who is a joint contractor or otherwise united in interest with him."

Appeal from trial term, New York county.

Action by Daniel H. Bennett and another against Robert C. Watson and John M. C. Bartholow. From a judgment for plaintiff, entered on the direction of the court after a trial without a jury, defendant Watson appeals. Affirmed.

The action was brought to recover a balance alleged to be due for money loaned to the firm of Watson & Bartholow, composed of the defendants Robert C. Watson and John M. C. Bartholow, between July 31 and October 12, 1885. The appellant Watson alone answered the complaint. He set up, among other defenses, the statute of limitations. This was the only defense litigated at the trial. It there appeared that Watson was served with the summons on May 18, 1894, and the defendant Bartholow on July 29, 1891; that Watson left New York City, where he had been living, in December, 1889, and went to Florida, giving up his house, and storing his furniture; that he remained in Florida till April, 1890, when he returned to New York City, and stayed a little over a month at an hotel; that he then went to Europe, and stayed there until June, 1893, when he again returned to this state, where he has since resided. The trial court held that these absences did not constitute part of the time limited for the commencement of the action, and hence that it was not barred by the statute. Further facts are stated in the opinion.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

George C. Blanke, for appellant.
J. Woolsey Shepard, for respondents.

BARRETT, J. We agree with the learned judge at trial term that the statute of limitations did not run against the plaintiffs' claim during the period of Mr. Watson's absence in Florida and

Europe.　It is quite clear that during this period Mr. Watson was not a resident of this state, but resided first in Florida, and later in Europe.　The appellant's contention is based upon an erroneous view of the meaning of the word "residence," as applied to the statute of limitations.　The appellant treats it as equivalent to "domicile."　Section 401 of the Code of Civil Procedure, however, does not require a change of domicile to prevent the running of the statute.　It may be that Mr. Watson's domicile remained unchanged during the three years of his absence in Florida and Europe; but his residence was undoubtedly without this state.　He was not a mere traveler, as was the case in Hart v. Kip, 148 N. Y. 306, 42 N. E. 712.　He went abroad for a special purpose, namely, the recovery of his son's health; and his intention was to remain abroad until that purpose was accomplished.　When he first left this state, he hired a house for himself and his family in Florida.　Later he went abroad, spending two entire winters at Nice and one at Mentone.　He had no intention of returning to this country until his son regained his health or died.　During all this period he had no house or abode of any kind in this state.　He tells us that he had an office here, but it appears that this was merely the office of the executors of his father's estate, and that he personally transacted no business there.　The case thus comes clearly within the rule laid down in Re Crilly, 13 App. Div. 247, 42 N. Y. Supp. 1097, and cases there cited, where it was held that the word "residence" expresses the idea of an abode which may be temporary, but is not transient; that is, an abode where one settles down with some business or other object which requires it, and with the intention of remaining steadily in the place until such object is accomplished.　Within this definition, the appellant was clearly a resident of Florida during the period of his sojourn there, and of Europe while he remained steadily there, in the accomplishment of the object which took him there.

There is a class of cases in which "domicile" and "residence" are treated as synonymous; as, where a statute prescribes residence as a qualification of the enjoyment of a privilege or the exercise of a franchise.　There, as was said in People v. Platt, 117 N. Y. 167, 22 N. E. 937, the word "residence" is equivalent to the place of domicile of the person who claims this benefit.　See, also, Dupuy v. Wurtz, 53 N. Y. 556, and De Meli v. De Meli, 120 N. Y. 485, 24 N. E. 996.　"Nonresidence," however, is not the equivalent of "nondomicile," when the word "nonresident" is used in statutes affording creditors a remedy by attachment, or where residence without the state is required to limit the effect of a debtor's absence upon the creditor's ordinary remedies against him.　In such cases it is sufficient, to constitute nonresidence, that the person absenting himself should have a settled abode without the state, with the intention of remaining there permanently, at least for a time (that is, not transiently), for business or other purposes.　Frost v. Brisbin, 19 Wend. 11.　Were an actual foreign domicile required, such statutes could easily be evaded. Indeed, the case would be a rare one when the creditor could make proof sufficient to secure the benefit of the statute.

There is another point in this case which is fatal to the defend-

ant's contention. It appears that the summons was served upon Mr. Watson's co-defendant, Bartholow, upon the 29th day of July, 1891. This was within six years of the time when the cause of action accrued. The identity of the summons served upon Bartholow with that served upon Mr. Watson is questioned, but we think, upon a careful examination of the record, that the finding of the learned judge upon this head is amply supported by the evidence. There can, in fact, be no doubt that the present action was duly commenced by the service of the summons in question upon Bartholow, upon the 29th day of July, 1891. Such being the case, section 398 of the Code of Civil Procedure is clearly conclusive upon the appellant. The action is upon a demand against Watson and Bartholow jointly, and that section provides that an action is commenced against a defendant when the summons is served on him, or on a co-defendant who is a joint contractor or otherwise united in interest with him. This section is entirely clear, and its effect is conclusive. This has been repeatedly conceded in cases under both the old and the present Code. Merritt v. Sawyer, 6 Thomp. & C. 160; Shaw v. Cook, 78 N. Y. 198; Howell v. Dimock, 15 App. Div. 102, 44 N. Y. Supp. 271. It is true that a promise by one partner after dissolution will not revive the debt as to his former co-partner; nor will even payment upon account by such partner have that effect. This rule, however, proceeds upon the cessation of any presumed agency, and simply denies the power of a joint debtor after dissolution to bind his co-debtor by any affirmative act of his. Here, however, the defendant who was served did nothing actively or affirmatively. He simply received the summons, and the statute provided the effect.

The judgment should be affirmed, with costs. All concur.