# FIDELITY & DEPOSIT CO. v. SHEAHAN.

No. 2518.    Opinion Filed April 5, 1913.

Rehearing Denied June 20, 1913.

(133 Pac. 228.)

1. **LIMITATION OF ACTIONS—Suspension—"Residence Out of State."** The residence out of the state which suspended the running of the Illinois statute of limitations in that state from October 5, 1897, up to and including October 5, 1907, was the fixed abode entered into with the intention to remain permanently, at least for a time, for business or other purposes.

2. **SAME—"Change of Domicile."** It is not necessary that there should be an actual change of the party's domicile in the strict legal sense of that word—that is, an abandonment of his domicile in Illinois and the acquisition of a domicile elsewhere—to bring him within the meaning of the statute of limitations; but he must have acquired a fixed and permanent abode or dwelling place out of that state, at least for the time being.

3. **TRIAL—Peremptory Instruction—Evidence.** Where, upon the issue of limitations, the undisputed evidence shows that plaintiff's cause of action is not barred by operation of the statute, it is error for the trial court to refuse a peremptory instruction to return a verdict for the plaintiff.

(Syllabus by Sharp, C.)

*Error from County Court, Canadian County;*
*H. L. Fogg, Judge.*

Action by the Fidelity & Deposit Company against W. A. Sheahan. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with instructions.

*Robert N. McMillen,* and *Johnson & Wishard,* for plaintiff in error.

*E. E. Blake,* for defendant in error.

Opinion by SHARP, C. The question presented for our consideration is one of limitations. The note sued on was executed at Peoria, Ill., October 5, 1897, and was payable one year after date. Action to recover judgment was begun October 7, 1909, in the county court of Canadian county. The defendant pleaded the Illinois statute of limitations, which provides that actions on promissory notes shall be commenced within ten years after the cause of action shall have accrued. The plaintiff replied, setting up another provision of the Illinois statute of limitations, which follows:

"If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the times herein limited—after his coming into or return to the state; and if after the cause of action accrues, he departs from and resides out of the state, then the time of his absence is no part of the time limited for the commencement of the action." (Hurd's Rev. St. 1911, c. 83, sec. 18.)

The material facts concerning defendant's departure from the state of Illinois, and his place of residence, were not disputed, and it is urged on the part of the plaintiff in error that the court erred in overruling the plaintiff's request for a peremptory instruction.

If, after the cause of action accrued, the defendant departed from the state of Illinois and resided outside its borders until the date of the institution of the present action, then we think the contention sound. The precise question, therefore, necessary for our determination, is: Did the defendant, according to the testimony, reside out of the state of Illinois after the accrual of plaintiff's cause of action, for it cannot be denied that he did depart therefrom. The testimony was that

defendant's family resided at 914 Oakward Boulevard, Chicago, since May 1, 1906. That defendant was in the employ of the Iron Mountain Railroad Company as its roadmaster at Poplar Bluff, Mo., from April 1 to November 1, 1906, and was at his home in Chicago from the latter date to December 28th following, attending to some personal affairs. On the latter date he was employed by the Rock Island Railroad Company, and a few days thereafter was sent to Geary, Okla., as trainmaster of the Panhandle division of said railroad company, and so continued until June 1, 1908, and remained there until the division offices were removed to El Reno on July 1, 1908, when defendant went to El Reno, retaining his former position as trainmaster, and which position he held until a short time before the trial in the month of July, 1910, when he moved to Eldon, Mo., at which place he was trainmaster for the same company. While in Geary his family occasionally visited him there. While in Oklahoma he did not vote here or in any other state, but it was shown that on August 10, 1907, a written petition was signed by him; in which he gave Geary, Okla., as his place of residence, and stated that he had resided there for a period of eight months. Much of defendant's time, while in the railroad company's employment, was occupied with his duties extending over several hundred miles of track, both in and out of the state; but that his office and headquarters were first at Geary, and afterwards at El Reno, is not disputed. It does not appear that defendant visited his family in Chicago from January, 1907, to the time of the trial in July, 1910.

Did the defendant, within the meaning of the statute, reside out of the state of Illinois during the period of his absence therefrom? It was stated by defendant while on the witness stand that he resided in the state of Illinois all the time while employed in Oklahoma, but, considering the testimony as a whole, it is obvious that during said term of years the defendant did not live in Illinois, and that it could only have been intended that during said time defendant maintained his home or domicile in said state. Construing the statute in

question, the Supreme Court of Illinois in *Pells et al. v. Snell et al.* 130 Ill. 379, 23 N. E. 117, said:

"The signification of the word 'reside,' as used in the present statute, presents a question not altogether free from difficulty. Numerous definitions of residence are to be found in the books, differing from each other mainly in respect to the greater or less degree of permanence of the inhabitancy or abode which they involve. See Abbott's Law Dict., title, Reside. There seems, however, to be * * * a fixed and permanent abode or dwelling place, at least for the time being, as contradistinguished from a mere temporary locality of existence."

The court, after reviewing decisions of the Supreme Court of Massachusetts, Vermont, Maine, and New Hampshire, observed:

"We would not be understood as adopting the doctrine of the decisions above cited to the extent of holding that there must be an actual change of the party's domicile, in the strict legal sense of that word, that is an abandonment of his domicile in this state and the acquisition of a domicile elsewhere, to bring him within the meaning of our statute of limitations; all we intend to hold being that he must acquire a fixed and permanent abode or dwelling place out of this state at least for the time being."

As was observed by the Supreme Court of the United States in *Barney v. Oelrichs et al.,* 138 U. S. 529, 11 Sup. Ct. 414, 34 L. Ed. 1037, in construing the words "to reside out of the state," in section 100 of the New York Code of 1849:

"We hold that the residence out of the state which operated to suspend the running of the statute under section 100 as originally framed was a fixed abode entered upon with the intention to remain permanently, at least for a time, for business or other purposes, and, as there was no evidence tending to establish such a state of fact here, the judgment must be reversed. The same conclusion has been reached in effect by many of the state courts, and reference to decisions in Massachusetts, Maine, Vermont, and New Hampshire will be found in the well-considered opinion of the Supreme Court of Illinois in *Pells v. Snell,* 130 Ill. 379 [23 N. E. 117], where the terms of the statute were nearly identical with those of that of New

York, and the court approved the definition of 'residence' as given in *Re Wrigley,* 8 Wend. [N. Y.] 134, *Frost v. Brisbin,* 19 Wend. [N. Y.] 11 [32 Am. Dec. 423] and *Boardman v. House,* 18 Wend. [N. Y.] 512."

The latter case reviews the former decisions of that court in *Penfield v. Chesapeake, O. & S. W. R. Co.,* 134 U. S. 351, 10 Sup. Ct. 566, 33 L. Ed. 940, and a large part of the early decisions of the appellate courts of New York, including the leading case of *Frost v. Brisbin,* 19 Wend. (N. Y.) 11, 32 Am. Dec. 423, and points out with great clearness the difference between the meaning of the words "residence," "domicile," and "inhabitancy." In quoting from *Burroughs v. Bloomer,* 5 Denio (N. Y.) 532, 535, it was said:

"The expressions 'and reside out of the state,' and 'the time of his absence' have the same meaning; they are correlative expressions. So that, while the defendant in this case resided out of, he was absent from the state."

The converse then should apply here, under the facts proven; for, if the defendant had departed from, he was not an actual resident of, the state of Illinois. A mere transient visit of a person for a time at a place does not make him a resident while there; something more is necessary to entitle him to that character. There must be a settled, fixed abode, an intention to remain permanently, at least for a time, for business or other purposes, to constitute a residence within the legal meaning of that term. A person may be a resident of one state, and have his domicile in another. He can have two or more places of residence, but only one domicile. Residence is an act; domicile is an act coupled with an intent. *Keller v. Carr,* 40 Minn. 428, 42 N. W. 292; *Long v. Ryan et al.,* 71 Va. 718. Obviously the defendant lived in first the territory afterwards the state of Oklahoma for a period of over three years. That was the place of his actual residence, as distinguished from his domicile, and it is this character of residence that the statute contemplates. The defendant had a settled, fixed abode, while in the discharge of his services to his employer. His employment was continuous for a period of

over three years, and it matters not that he did not vote in the state or elsewhere, or that he took no part in local affairs, as a failure to discharge fully all of the privileges and duties of a citizen does not of itself determine the question of one's residence. Where a man's family resides is not necessarily the place of his residence. *Frost v. Brisbin, supra; Penfield v. Chesapeake, O. & S. W. R. Co., supra; Forbes v. Thomas,* 22 Neb. 541, 35 N. W. 411; *Krone v. Cooper,* 43 Ark. 547; *Amsbaugh v. Exchange Bank,* 33 Kan. 100, 5 Pac. 384. To our minds the statute contemplated actual residence out of the state, and it being shown and not denied that the defendant did reside for a period of over three years in what is now this state, and while here occupied a permanent position, he therefore had departed from and resided out of the state of Illinois. *Johnson v. Smith,* 43 Mo. 499; *Huss v. Central Railroad & Banking Co.,* 66 Ala. 472; *Hanover Nat. Bank v. Stebbins,* 69 Hun. 308, 23 N. Y. Supp. 529; *Hart v. Kip,* 74 Hun, 412, 26 N. Y. Supp. 522; *Austen v. Crilly,* 13 App. Div. 247, 42 N. Y. Supp. 1097; *Bennett v. Watson,* 21 App. Div. 409, 47 N. Y. Supp. 569; *Weitkamp v. Loehr,* 53 N. Y. Super. Ct. 79; *De Meli v. De Meli,* 120 N. Y. 485, 24 N. E. 996, 17 Am. St. Rep. 652; *Hanson v. Graham,* 82 Cal. 631, 23 Pac. 56, 7 L. R. A. 127; *Morgan v. Nunes,* 54 Miss. 308; *Lawson v. Odlard,* 46 Minn. 243, 48 N. W. 1019.

From the undisputed evidence, the plaintiff's cause of action was not barred by limitation, and the amount to which it was entitled to recover, if at all, not being controverted, it was error for the trial court not to grant the plaintiff's request for a peremptory instruction to return a verdict for the plaintiff.

The judgment should be reversed and the cause remanded, with instructions to the trial court to render judgment for the plaintiff.

By the Court: It is so ordered.