EDWIN C. KELLER and another *vs.* ANNA CARR.

May 7, 1889.

Attachment—Who is a " Non-Resident Debtor."—A debtor may reside or remain out of the state so long and under such circumstances as to be a non-resident, within the meaning of the statute relating to attachments, although by reason of his intention to return his political domicile continues to be in the state. It is a question of *actual* residence, and not of domicile merely; and this is a question of fact to be determined by the ordinary and obvious *indicia* of residence. But a mere casual or temporary absence of a debtor from the state on business or pleasure will not render him a non-resident, even although he may not have a house of usual abode here, at which a summons against him might be served during such absence.

Appeal by defendant from an order of the district court for Hennepin county, *Rea*, J., presiding, sustaining an attachment.

*J. L. Dobbin*, for appellant.

*C. E. Conant*, for respondents.

MITCHELL, J. Appeal from an order refusing to vacate a writ of attachment. The writ was issued September 13, 1888, on the ground that the defendant was not a resident of the state, and the motion to vacate was made upon the ground that she was in fact a resident. The affidavits used upon the motion show, without material conflict,

about this state of facts: The defendant had been a resident of the city of Minneapolis for about 10 years. On April 5, 1888, her residence was destroyed by fire, after which, and until June 7th, she boarded in the city. On the latter date she vacated her quarters in the boarding-house, stored her household goods in plaintiffs' stable, and, taking with her only her wearing apparel, left the state for the purpose of going to Chicago on business, and then to Canada on a visit to relatives, but with the intention of returning to Minneapolis after she completed her visit. It does not appear when she intended to return, except that she did not do so until October 15th, but that her absence was extended somewhat beyond her original intention by reason of the sickness of her mother in Canada. It may also be fairly assumed from the affidavits that from the time she left in June until she returned in October she had no dwelling or place of abode in the state at which service of a summons could have been made upon her. The court below found, from the affidavits, that, at the time of issuing the attachment, she was absent from the state with the intention of returning thereto, but had no residence or place of abode in the state where a summons could be served on her, and therefore that she was not a "resident of the state," within the meaning of the statute relating to attachments. Gen. St. 1878, c. 66, § 147.

Although this remedy is allowed in nearly every state against "non-resident debtors," yet as to who are included in that classification there is much conflict of opinion and confusion of ideas in the courts. Is "residence" to be construed as synonymous with "domicile," and is a debtor to be deemed a resident of the state, however long his absence from it, and wherever the place of his actual abode, provided he retains the intention of returning at some distant or indefinite future date? Or is he to be deemed a non-resident every time he casually and temporarily goes out of the state, provided he leaves therein no fixed and usual place of abode, occupied by some person of suitable age and discretion, with whom a summons might be left? Or, in order to render one a non-resident, whose political domicile is in the state by reason of his intention to return, must his absence be so prolonged, or for such an indefinite period, that his act-

ual residence can no longer be said to be within the state? To solve this question we must consider the object of this remedy by attachment against non-residents. Its primary object doubtless is to furnish a remedy against the debtor's property in cases where through his absence from the state he is beyond the reach of the ordinary process of the court, so that jurisdiction of his person cannot be obtained by service of a summons. Hence, whenever the propriety of the writ against the property of a debtor as a non-resident is in issue, the statute relating to attachments should be compared with that relating to the service of summons.

Under our statute a summons can be served only upon the defendant in person, or by leaving a copy "at the house of his usual abode, with some person of suitable age and discretion then resident therein." Gen. St. 1878, c. 66, § 59. It will be seen, therefore, if the debtor be permanently or continuously absent from the state, and have no place of abode in it, no jurisdiction could ever be obtained in an action against him, except by attachment of his property. Hence, if the first of our three interrogatories is to be answered in the affirmative, and no one is to be deemed a non-resident under this statute whose political domicile is in the state, the primary object of the remedy by attachment would be, to a great extent, defeated. Suppose, for example, a resident of this state sell or otherwise dispose of his residence, and leave the state with the intention of being absent for business or pleasure for a term of years, but with the intention of returning; his domicile would, because of this intent, be still in this state, although he no longer has any place of abode in it. During his absence, jurisdiction of his person by service of a summons could not be obtained, and therefore, unless his property could be attached as a non-resident, his creditors would be all this time powerless to collect their debts, notwithstanding he had ample property within the state. No such construction of the statute is permissible. "Residence" and "domicile" are not to be held synonymous. "Residence" is an act. "Domicile" is an act coupled with an intent. A man may have a residence in one state or country, and his domicile in another, and he may be a non-resident of the state of his domicile, in the sense that his place of actual residence is not there.

Hence the great weight of authorities hold—rightly so, as we think —that a debtor, although his legal domicile is in the state, may reside or remain out of it for so long a time, and under such circumstances, as to acquire, so to speak, an actual non-residence, within the meaning of the attachment statute.

On the other hand, it has never been held that a mere casual and temporary absence from the state is any ground for an attachment. If it were, no limit could be set to the oppressive use of the process. As a mere temporary presence of a non-resident debtor will not relieve his property from attachment, so the mere temporary absence of a resident debtor should not render his property subject to it; and as a person may be an actual resident of the state, although he have no fixed and usual place of abode in it, the mere temporary and casual absence of such a one from the state ought not, within the spirit of the statute, to render his property subject to attachment, although by reason of his temporary absence, and his lack of a fixed place of abode, his creditor's ability to commence suit by service of summons is for the time suspended or interrupted. The absence from the state must be so protracted as to amount to a prevention of legal remedy by the ordinary process of the court, and of such a nature that he cannot longer be deemed an actual resident. If so, his *status* is fixed, and the legal consequences attaching will not be affected by any secret *animus* or intent on his part.

The question, then, becomes really a question of fact, whether the defendant's absence from the state has been of such a nature and duration that he has ceased to be an actual resident of the state, and this must be determined by the ordinary and obvious *indicia* of residence. This rule, which may be termed a sort of "middle ground," is, we admit, liable to the objection that it is indefinite, and furnishes no exact legal test by which to determine the question of residence or non-residence. But it leaves the question no more indefinite than those upon which attachments upon other grounds depend, such as that the debt was fraudulently contracted, or that the debtor has absconded with intent to defraud. Moreover, the fact of actual residence is not as difficult of proof as would be the existence of a secret *animus revertendi* upon which the question of domicile often depends.

This middle ground avoids unnecessary damage to the debtor, and at the same time protects the creditor by allowing the remedy whenever the absence of the former is such as to substantially deprive the latter of legal remedy by ordinary process. The authorities on this subject are too numerous to be cited, but may be found collated and discussed under the head of " Non-Resident Debtors" in any text-book on attachments.

It remains to apply the law to the facts of this case. From his language we infer that the learned district judge adopted the view that the fact that the defendant had, during her absence, no residence or place of abode in the state where a summons could be served on her, constituted her a non-resident, within the meaning of the statute. According to our views, already expressed, this would not be conclusive of the question. No precise or definite rule can be laid down as to the exact duration of the absence which will render a person a non-resident. Each case must be governed somewhat by its own particular facts. The question is whether the debtor has become an actual "non-resident," within the meaning of that term as we have attempted to define it. In determining this there should be considered not only the duration of the absence, but its nature and purpose. In this case the defendant was absent prior to the attachment only about three months, and altogether only about four months, and this, it appears, was longer than she contemplated when she left. And while the important inquiry is not whether she had acquired a place of residence abroad, but whether she had ceased to be an actual resident of this state, it is important, as bearing on the latter question, that defendant had not only acquired no residence out of the state, but the purpose of her absence was not such as to require or even admit of her acquiring it. What she contemplated was a brief stay in Chicago to adjust some business with an insurance company, and then a visit to her mother, in Canada. Such an absence from the state was not materially different in its nature from that of hundreds of people who temporarily close up their dwellings, and go off south or east for health or pleasure, for weeks or even months at a time. We think it never occurred to the bar of the state that such persons, during such an absence, were non-residents, and their property subject

to attachment.    To so hold would, in view of the social and business habits of people in this. age of travel, lead to very serious results.

Order reversed.