| 46 | 243 |
| 71 | 506 |

HENRY J. LAWSON *vs.* JAMES ADLARD and Wife.

## May 26, 1891.

**Attachment—Non-Residence Actual or Legal.**—When construing statutes relating to attachment proceedings against non-residents, a clear distinction has been recognized between an actual and a legal residence, the latter having been, generally, deemed the domicile, and not the residence contemplated.

**Same—Actual Residence Contemplated.**—It is the actual residence of the debtor, and not his domicile, which determines the *status* of the parties in such proceedings. .

**Same—Facts Showing Non-residence.**—The facts in this case considered, and the distinction between them and those passed upon in *Keller* v. *Carr*, 40 Minn. 428, pointed out.

Appeal by plaintiff from an order of the district court for Traverse county, *Brown*, J., presiding, vacating a writ of attachment allowed and issued on the ground of defendants' non-residence, in an action on a promissory note of $600.

*W. Almont Gates*, for appellant.

*John S. Noble*, for respondents.

COLLINS, J. From the affidavits upon which the court below tried the motion to vacate and set aside a writ of attachment, based upon an affidavit wherein it was asserted, as a ground for the attachment, that the defendants were not residents of this state, it appeared that for at least two years prior to February 1, 1889, the defendants, husband and wife, actually resided in Minnesota, occupying a house and lot owned by them in the village of Brown's Valley. Mr. Adlard was about that time appointed government blacksmith at an agency situated upon an Indian reservation, in South Dakota, and immediately proceeded there, with his wife and children, remaining in the government service about 14 months, during which time, the affidavit for attachment was made and the writ issued. A portion of his household goods and furniture he took with him. The remainder were stored in the dwelling-house before mentioned, and at different times during the 14 months (the number not appearing) both defendants

returned and occupied the house for a day or night. For a period of some six months during Adlard's employment at the agency, a tenant lived in the lower part of the house, the upper story being reserved by the defendants as a place wherein to keep their goods and furniture not removed to Dakota. They occupied a house at the Indian agency, and were housekeeping all of the time he was employed as a government blacksmith, but returned to the dwelling in Brown's Valley when he ceased working at the agency, subsequently to the issuance and service of the writ. It was also stated in the affidavits that at no time did either of the defendants contemplate a relinquishment of their residence in this state, although it is apparent that the term or period of absence was entirely problematical, wholly depending upon the length of time Mr. Adlard was retained as an agency employe.

With this showing of facts we are asked to reverse an order of the district court whereby the writ was vacated and set aside, upon the ground that the defendants were non-residents within the contemplation of Gen. St. 1878, c. 66, § 147, relating to attachments. This subject has been discussed, very recently, in *Keller* v. *Carr*, 40 Minn. 428, (42 N. W. Rep. 292,) and the court below seems to have placed its conclusion upon that case. It was there said that whether a defendant's absence from the state has been of such a nature and character that he has ceased to be an actual resident, within the meaning of the statute regulating attachments, is a question of fact to be determined by the ordinary and obvious *indicia* of residence. It must not be determined by construing the word "residence" as synonymous with the word "domicile," for one absent from the state on business or pleasure, having the intent to return, may have a political domicile here, although his residence is elsewhere. He may be a non-resident of the state of his domicile, in the sense that his actual place of abode is not there. "Hence," said Mr. Justice Mitchell, in behalf of this court, "the great weight of authorities hold—rightly so —that a debtor, although his legal domicile is in the state, may reside or remain out of it for so long a time and under such circumstances as to acquire, so to speak, an actual non-residence, within the meaning of the attachment statute." Casual or transitory ab-

sence from the state, although there may be no place of abode at which service of a summons may be made during such absence, is insufficient, however, to warrant the issuance of a writ upon the ground of non-residence. The absence must be so protracted as to amount to a prevention of legal remedy by ordinary process, and of such a nature that the debtor cannot longer be deemed an actual resident; and, as a mere casual or temporary absence will not render his property subject to attachment, so the mere fact that he is occasionally and transiently within the state will not relieve him from the charge of having become a non-resident. And it was further said that, in determining whether one has ceased to be a resident, it is important to know whether the purpose of the absence was such as to admit or require the acquisition of residence elsewhere, and whether one has been so acquired.

It is apparent, from an examination of the most approved authorities, that, in construing statutes relating to attachment of the property of non-residents, a wide distinction has been recognized between an actual residence and a legal residence, the latter being generally deemed the domicile, and not the residence contemplated; the word "residence" being construed in its popular sense, as the act of abiding or dwelling in a place for some continuance of time. In *Morgan* v. *Nunes*, 54 Miss. 308, it was said that "residence" implies an established abode, fixed permanently for a time, for business or other purposes, although there may be an intent in the future, at some time or other, to return to the original domicile. In *Long* v. *Ryan*, 30 Grat. 718, it was laid down that to "reside" in a place is to abide; to sojourn; to dwell there permanently, or for a length of time. It is to have a permanent abode for the time being, as contradistinguished from a mere temporary locality of existence. In the frequently cited case of *Frost* v. *Brisbin*, 19 Wend. 11, it was said that a transient visit of a person, for a time, at a place, does not make him a resident while there; that something more is necessary to entitle him to that character; there must be a settled, fixed abode; an intention to remain permanently, at least for a time, for business or other purposes, constitute a "residence," within the legal meaning of that term. To put it concisely, a "resident" of a place

is one who dwells in that place for some continuance of time, for business or other purposes, although his domicile may be elsewhere. In each of the cases above mentioned, the clear distinction between a "residence" and a "domicile" was pointed out, the assertion made that the former may be in one state and the latter in another, and the proposition emphasized that it is the actual residence of the debtor, and not his domicile, which determines the *status* of the parties in attachment proceedings. To the same effect may be cited *In re Thompson*, 1 Wend. 43; *Haggart* v. *Morgan*, 5 N. Y. 422; and *Weitkamp* v. *Loehr*, 53 N. Y. Super. Ct. 79, recently referred to in *Barney* v. *Oelrichs*, 138 U. S. 529, (11 Sup. Ct. Rep. 414.) See also, *Stratton* v. *Brigham*, 2 Sneed, 420; *Chariton Co.* v. *Moberly*, 59 Mo. 238; *Krone* v. *Cooper*, 43 Ark. 547.

Now, where was the actual residence of these defendants at the time of the making of the affidavit which has been attacked as untrue? If it was in Dakota, then the proceeding was regular, although the defendants may have retained their domicile in Minnesota. Mr. Adlard had secured work in another state, and the entire family had departed from our borders, taking with them enough of their household goods to establish themselves in a new dwelling-place. They occupied a house in the new locality, and immediately went to housekeeping. The nature and purpose of the absence was not only such as to admit of the acquisition of another residence, but was such as to require its acquisition, and a "residence," in the popular meaning of the word, was actually established upon the reservation. It was the abiding place, the home, of the family. To be sure, a portion of the household effects were kept in the building at Brown's Valley, but that did not constitute or continue it the actual residence of the defendants; they had absented themselves and were residing at another place. And while this question of residence is not to be determined by the mere fact that no member of the family remained in actual possession, it is plain that at no time during the period of 14 months could service of a summons have been made as at the house of the usual abode of either defendant. The house was uninhabited, except for about six months, when a tenant resided in the lower story. He was residing, for the time, in his own house, and not in the house

of the usual abode of those from whom he rented. But it may be suggested that occasionally the defendants returned, remaining at the house for a day or night, as circumstances required, and that, therefore, they did not lose their residence. An occasional visit cannot be allowed to control; the question is to be determined by the ordinary and obvious *indicia* of residence, as was said in the *Keller Case*. Nor can the fact that, at times, when making these visits to the premises, personal service of a summons might possibly have been made, have any great bearing upon the question, for the same reason. The plaintiff ought not to be compelled to watch for an opportunity to make personal service, and, if this be so, the absence deprived the creditor of the usual legal remedy for the period of 14 months.

The main contention of the respondents seems to be that, as Mr. Adlard was employed by the government for an indefinite period of time, and, further, that as it was the intention of the defendants to return to the state when his term of employment should end, they could not acquire a residence at the agency. It is true that a person in government employ may be discharged at any moment, and that his term of service depends upon the will of the authorities. But this might be the situation had Adlard gone to work for a private individual out of the state. It can make no possible difference that he accepted a place under the government, from which he might have been relieved, without warning, instead of taking service at the hands of an individual having the same right of peremptory discharge. Nor was it material that from the affidavits it appeared that it was the intention of the parties to return to Brown's Valley when Mr. Adlard's employment ceased. If their *status* became fixed, the legal consequences attached to it were not affected by any secret *animus* or intent which they may have had. *Keller* v. *Carr, supra.* Their stay in Dakota, the length of time they might have an abode there, was wholly uncertain; it might have terminated in a day, it might have continued for years, and they could not be permitted to show an intention to return and resume a residence at some indefinite time, in order to defeat the attachment. *Risewick* v. *Davis,* 19 Md. 82; *Weitkamp* v. *Loehr, supra.*

We have stated that the court below seems to have considered this case as controlled by that of *Keller* v. *Carr*. But each case must be governed, to an extent, by its own particular facts, and those now present are wholly unlike those which appeared in the *Keller Case*. There the defendant, storing her household effects, removing from the state her wearing apparel only, but retaining no house of usual abode, was absent upon a visit for the period of three months prior to the issuance of a writ (on the ground of non-residence) and for one month thereafter. She made no attempt to acquire residence outside of the state, and, from the nature and purpose of the absence, it is manifest that she could not. In the case at bar, Mr. Adlard sought and obtained employment at his trade, at a point in South Dakota. He departed from this state with his wife and children, and thereafter had no house of usual abode within our borders. He left a part of his household belongings, but took sufficient for another dwelling, into which he moved, and wherein he set up housekeeping. Both defendants had their home upon the reservation for about one year before the writ of attachment was issued, and some two months intervened thereafter before their return. The nature and purpose of their absence absolutely demanded a residence at the agency, and one was actually established and maintained for more than one year. It had every characteristic of permanency, unless great significance be given to the fact that Mr. Adlard's term of service was uncertain, and that it was the intention of both defendants to return to this state at some future time. Under an attachment law similar to our own, and with the present showing, would the courts of South Dakota have declared the defendants non-residents? We think not. The defendants may have retained a domicile here, and for many purposes might not be deemed non-residents, but, determining the question by the ordinary and obvious *indicia* of residence, it must be held that, with respect to the statute regulating attachments, they were not residents of Minnesota. We deem it unnecessary to discuss the remaining points argued by the counsel.

Order reversed.