W. F. DOLAN ET AL. V. ELVIN S. ARMSTRONG.

[FILED OCTOBER 5, 1892.]

1. **Attachment:** MOTION TO DISSOLVE: EVIDENCE: BURDEN OF PROOF. When a defendant moves to dissolve an attachment on the ground that the affidavit for the attachment is untrue, and files in support thereof his affidavit denying the facts stated in the original affidavit for attachment, the burden of proof is upon the plaintiff to sustain the attachment by a preponderance of the evidence.

2. ———: ———: REVIEW. The order of the trial court made at the hearing of such a motion, upon affidavits, will not be reversed by the supreme court, where there is a conflict of evidence, unless the ruling is manifestly against the clear weight thereof.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*Conlon & Groves, R. W. Sabin,* and *Griggs, Rinaker & Bibb,* for plaintiffs in error.

*Rickards & Prout, contra.*

NORVAL, J.

Plaintiffs in error commenced their action in the court below against defendant in error to recover the sum of $1,155.77 for goods sold and delivered. At the same time an affidavit for an order of attachment was filed, which alleges as grounds therefor "that the defendant E. S. Armstrong is about to remove his property, or a part thereof, out of the jurisdiction of the court with the intent to defraud his creditors; that the defendant is about to convert his property, or a part thereof, into money for the purpose of placing it beyond the reach of his creditors; that the defendant has property and rights in action which he conceals; that the defendant has assigned, removed, and disposed of, and is about to assign, remove, and dispose of, his property with the intent to defraud his creditors; that the defendant has fraudulently contracted the debt and has fraudulently incurred the obligation for which suit is about to be commenced."

On the proper undertaking being filed, an order of attachment was issued, which was executed by levying on the property of defendant.

Subsequently, but before the trial of the cause upon its merits, the defendant filed a motion to dissolve the attachment and discharge the attached property, on the ground and for the reason that the facts stated in the affidavit, upon which the order of attachment was issued, were false and untrue. Numerous affidavits were read in support of the motion, and counter-affidavits were presented by the plaintiffs. Upon the hearing, the attachment was dissolved, which ruling of the court is assigned for error.

Counsel for plaintiffs in error have abandoned all

grounds set up in the original affidavit for attachment, except the last, that the defendant fraudulently contracted the debt and incurred the obligation for which suit was brought.

At and for some time previous to the suing out of the attachment defendant in error was engaged in the mercantile business at Blue Springs. On the 29th day of December, 1890, he was indebted to plaintiffs in error in the sum of $1,262.19 for goods sold and delivered, of which amount the sum of $482.77 was then past due. On said date plaintiffs in error sent their attorney, George W. Groves, to Blue Springs for the purpose of collecting or securing their said claim. The attorney called upon Mr. Armstrong at the latter's place of business and demanded payment of the debt, or security. Defendant in error refused to give security, but paid the sum of $100 to apply on the account, and promised to reduce the claim at least $300 in three weeks, and also made a statement as to his financial condition, which seemed to satisfy Mr. Groves, and the demand for security or payment was not then further pressed. It appears from the record that after December 29, and prior to the suing out of the attachment, plaintiffs in error sold and delivered other goods to Armstrong to the amount of $815.55, and during the same period they were paid by defendant over $800, which was applied on their account for goods sold previous to December 29, thus leaving due the sum of $340.22 on Armstrong's indebtedness incurred prior to said date, and the full amount of the goods since that time purchased. It is contended that defendant in error made a false and untrue statement regarding the value of his property, the amount of incumbrances thereon, and the amount of his liabilities to creditors other than plaintiffs in error, and that, relying on such representations, and believing the same to be true, the goods were sold to defendant upon credit. As to goods sold prior to December 29, 1890, and which are included in the account sued on,

there is no competent or legal proof that defendant made any false representations to plaintiffs to induce the sale, or that he had prior thereto made any statement to them about his financial condition. We have not overlooked the fact that Mr. Groves, in one of his numerous affidavits filed in support of the attachment, does say that defendant, prior to November 26, 1890, in a letter written to plaintiffs, represented that "he was in good circumstances, and soon would be able to reduce their claim, as he was getting in better shape." This is the only testimony to be found in the entire record which plaintiffs could in any manner rely upon as tending to show that defendant made any representations to plaintiffs about his financial standing prior to December 29, and to us it is not convincing. Mr. Groves purports to give in his affidavit the contents of a letter, which, if ever written by Armstrong, and of this there is no competent proof, the affidavit discloses is still in existence, which letter it does not appear from the testimony Mr. Groves ever saw or had in his possession. Such testimony is wholly insufficient to sustain the charge of fraud or disprove the positive allegation made by defendant in his affidavit, that the debt upon which the attachment was issued was not fraudulently contracted. Fraud cannot be presumed, but must be proven by the party alleging it, by a clear preponderance of the evidence. The plaintiffs have shown no cause for an attachment for the goods bought prior to December 29, and even though sufficient cause existed for the issuing of an attachment for the goods purchased subsequent to said date, the attachment could not be sustained.

The precise point was ruled upon in *Mayer v. Zingre*, 18 Neb., 458. There an attachment was issued upon two causes of action, one for a debt fraudulently contracted and the other not so incurred. An order of attachment was issued, covering both causes of action, upon an affidavit alleging that "said defendant fraudulently contracted

the debt and incurred the obligation for which this suit was brought." It was held that the attachment was properly discharged for want of grounds covering the whole indebtedness.

But we are not compelled to rest our decision upon this ground alone, as no cause for granting an order of attachment existed as to any portion of the goods purchased by defendant. There is no room for dispute that Armstrong on December 29, 1890, made a statement to Groves of the nature and value of his assets, as well as the amount of his indebtedness. The testimony is conflicting, not only as to what the representations were, but also whether the same were true or false.

Mr. Groves in his affidavit states that the defendant represented that he was in good financial condition and circumstances; that he owned the store building and the lot in Blue Springs, on which the same is situated, of the value of $6,000, with an incumbrance of $1,800; that he owned 160 acres of land in Deuel county, Dakota, worth $2,400, with an incumbrance of $1,300; that his stock of goods was worth $2,500 and was unincumbered; that he had book accounts which could be collected to the amount of $2,000; that he was buying no goods except what he was then purchasing of plaintiffs, and that he was not indebted to all his creditors more than $300, except what he owed plaintiffs and the amount of liens on the real estate.

The affidavits of W. P. McDonald, the book-keeper and credit man for plaintiffs, and C. J. Drury, one of the plaintiffs, contain substantially the same allegations as made by Mr. Groves in his affidavit.

Plaintiffs also read on the hearing the following statements in writing signed by defendant:

"The following property is owned entirely by me: One two-story brick store building in the city of Blue Springs, Nebraska, and land occupied by said building, reasonably worth the sum of $6,000, with $1,800 incumbrance; stock

of goods, wares, and merchandise worth the sum of $2,500, no incumbrance; book accounts which can be collected, $2,000; 160 acres of land in Deuel county, Dakota, incumbrance $1,300; store building, insured, $2,000. I do not owe in the aggregate more than $300, except what I owe Dolan, Drury & Co. E. S. ARMSTRONG."

The defendant in his affidavit denies that he ever, at any time, stated to Groves or plaintiffs that he was in good financial condition, or that he was not buying any goods to run his store except what he was purchasing from Dolan, Drury & Co., and avers that he was at the time selling and handling goods in his business which plaintiffs did not handle and could not furnish, as they well knew; denies that he represented that he was not indebted to all his creditors to exceed $300, except mortgages on his real estate, or that he stated that his store building was worth $6,000, or that his land in Dakota was worth $2,400, but charges the fact to be that said Groves, while in defendant's store, had a blank paper in his possession on which he pretended to take down the statement, which he, Groves, requested defendant to make, and that in the making of the statement Groves asked defendant what the store building was worth, and to which defendant replied he did not know the value thereof, but that it cost about $6,000, and that there was an incumbrance thereon of about $1,800. Alleges that the building did cost defendant $6,200; that he did not state that his stock was worth $2,500, but did say that he did not know the value of the goods, whereupon Groves requested him to guess as nearly as he could their worth, and that thereupon defendant said about $2,000. Admits that he stated that he had book accounts in the neighborhood of $2,000 at the time and avers that said statement was true; denies that he represented what the Dakota land was worth but informed Groves that the banker had written defendant it was of the value of $1,800, but that defendant personally knew nothing about it except that it was mortgaged for

$1,500; that he informed Groves that his indebtedness for goods alone, aside from what he owed plaintiffs, would amount to about $500; that thereupon Groves handed the statement to defendant for his signature, and affiant believes that the same had been written consistently with the representations he had made, and being busy waiting on customers, signed the same without careful reading; that the statements so made, so far as the same were correctly written down by Groves, are true.

The averments in the affidavits of McDonald and Drury relating to the representations of the defendant are entitled to no weight, for the reason that the uncontradicted testimony shows that neither of the affiants were present at Blue Springs at the time the representations were made and therefore could not have known personally of the transaction. They doubtless testified from information received from Groves or derived from the written statement signed by defendant, or both, which would be hearsay and inadmissible. The trial court had before it on one side, then, the affidavit of Groves and the written statement signed by defendant, and on the other side, the defendant's own testimony. As we have seen, the facts testified to by defendant are contradicted by Groves and the written statement, which raised a question of veracity for the trial court to decide. If the trial judge believed the testimony of defendant and accepted as reasonable and reliable his explanation in regard to the making and signing of the written statement, then he was justified in finding that defendant's version of the transaction was true. The conclusion reached by the trial court on the question is not so clearly against the preponderance of the evidence as to warrant us in disturbing it. To do so would be to ignore the rule which has been so often announced and applied by this court in cases of this kind, that the findings of fact by a trial court will not be reversed when there is a conflict of evidence, unless manifestly wrong. (*Mayer v. Zingre*, 18

Neb., 458; *Holland v. Commercial Bank,* 22 Id., 571; . *Johnson & Co. v. Steele,* 23 Id., 82; *Feder, Nusbaum & Co. v. Solomon & Nathan,* 26 Id., 266.)

Accepting then as true the testimony of defendant bearing upon the subject of representations, does the evidence show his statements were false? We answer in the negative. The evidence is overwhelming that the defendant truthfully stated the value of his property, the amount of incumbrances thereon, and the amount of his indebtedness. There is no foundation for the charge that he fraudulently contracted the debt for the recovery of which suit was brought. The order of the district court dissolving the attachment is

AFFIRMED.

THE other judges concur.