## FRANKLIN E. JOHNSON v. DAVID MAY ET UX.

FILED NOVEMBER 18, 1896.   No. 6905.

1. **Attachment**: RESIDENCE OF DEFENDANTS. The question of residence, within the meaning of the statute regulating attachments in this state, is generally one of intention, to be determined from the facts and circumstances in each particular case.

2. ——: ——: ABANDONMENT. One who has acquired a residence in a given place, within the meaning of the attachment law, is presumed to have abandoned his former domicile, and *vice versa*.

3. ——: ——: ——. Absence for the purpose of business or pleasure is of itself not such an abandonment of one's place of abode

within the state as to authorize the issuance of an attachment against him on the ground of non-residence.

4. ———: ———: NON-RESIDENTS. Evidence examined, and *held* to sustain the finding that defendants were not, at the time of the commencement of the action against them, non-residents of this state.

ERROR from the district court of Lancaster county. Tried below before STRODE, J.

*J. H. Broady*, for plaintiff in error.

References: *Fitch v. Waite*, 5 Conn., 121; *Winkler v. Barthel*, 6 Ill., 111; *Mathews v. Loth*, 45 Mo. App., 455; *Koch v. Losch*, 31 Neb., 625; *Rockwell v. Blair Savings Bank*, 31 Neb., 128; *Bond v. Dolby*, 17 Neb., 491; *Keith v. Stetter*, 25 Kan., 104; *Baldwin v. Flagg*, 43 N. J. Law, 495; *Hanson v. Graham*, 82 Cal., 631; *Haggart v. Morgan*, 5 N. Y., 422; *In re Thompson*, 1 Wend. [N. Y.], 43; *Frost v. Brisbin*, 19 Wend. [N. Y.], 11; *Carden v. Carden*, 107 N. Car., 216; *Olmstead v. Rivers*, 9 Neb., 236; *Blodgett v. Utley*, 4 Neb., 25.

*A. W. Field*, contra.

References: *Lane v. Fellows*, 1 Mo., 200; *Kingsland v. Worsham*, 15 Mo., 657; *Ellington v. Moore*, 17 Mo., 424; *Fuller v. Bryan*, 20 Pa. St., 144; *Pfoutz v. Comford*, 36 Pa. St., 420; *Mandel v. Peet*, 18 Ark., 236; *Pitts v. Burroughs*, 6 Ala., 733; *Chariton County v. Moberly*, 59 Mo., 238; *Stratton v. Brigham*, 2 Sneed [Tenn.], 420; *Reed's Appeal*, 71 Pa. St., 378; *Lawson v. Adlard*, 46 Minn., 243; *Keller v. Carr*, 40 Minn., 428.

POST, C. J.

In the district court for Lancaster county the plaintiff in error, Franklin E. Johnson, sued to recover the sum of $2,500 and interest, being the amount of two promissory notes of the defendants below, David May and Tillie May, who are also defendants in error. At the commencement of said action an order of attachment was issued upon

the filing by the plaintiff therein of a bond and an affidavit alleging as grounds for such attachment: (1) The defendants are non-residents of this state; (2) they have absconded with intent to defraud their creditors; (3) they have left the country of their residence in order to avoid the service of summons; (4) they are about to convert their property into money for the purpose of placing it beyond the reach of their creditors; (5) they have property and rights of action which they conceal; (6) they have removed and disposed of a part of their property with intent to defraud their creditors. The defendants subsequently entered their appearance in the district court and moved to discharge the attachment, assigning as grounds therefor: (1) The affidavit upon which said order was issued is insufficient in law; (2) the allegations of said affidavit are wholly false. Said motion was, upon hearing thereof, sustained and an order entered discharging the attachment, whereupon the plaintiff, who had in the meantime given an undertaking as prescribed by statute, removed the cause into this court for review, assigning as error the ruling above mentioned.

The important question presented by the record, and which is decisive of all others argued, is that of the defendants' residence at the date of the commencement of the action, to-wit, January 29, 1894. Defendants, who are husband and wife, have resided in the city of Lincoln for twenty-five years or upwards, during which time the said David May has been engaged in the retail clothing trade and also as a jobber in said line, by means whereof he has accumulated property of considerable value which, aside from his household goods, and a stock of merchandise hereafter described, consists of town lots in Lincoln, and lands in the states of Nebraska, Iowa, Kansas, and Colorado, the title to a portion thereof being in his wife, Tillie May. The real estate mentioned was, at the date above named, according to the affidavit of the said David May, reasonably worth the sum of $400,000, in addition

to which he was possessed of personal property in the
city of Lincoln of the value of $18,000, which, with the
exception of a paid up life insurance policy for $10,000,
was free from incumbrance and subject to seizure in sat-
isfaction of any execution against him.   Of the several
lots or parcels of land aforesaid, a majority were incum-
bered by mortgages and other liens, amounting in the
aggregate to the sum of $43,000, in addition to which the
defendants had unsecured liabilities not exceeding $48,-
000, making, according to their statements, a total in-
debtedness of $91,000.   On the 13th day of October, 1893,
the defendants received information by telegraph of the
serious illness of Mrs. May's mother residing in the city
of New York, and two days later, in response to a second
message of like import, they left Lincoln for New York,
intending to visit with relatives in the east some weeks
before returning home.   Preparatory to his departure,
however, Mr. May called upon his Lincoln creditors, who
represent the larger portion of his indebtedness, and ex-
plained to them the cause of his contemplated absence, as
well as his plans for the immediate future, which included
the raising of money in New York with which to meet his
obligations as they matured.   He also furnished credit-
ors with his New York address; and his voluminous cor-
respondence by mail and telegraph with parties in this
state, including the plaintiff in error, tends to corrobo-
rate the statement that his intention was to return to
Lincoln as soon as he had accomplished the purpose of
his visit.   Defendants, in their affidavits, say that owing
to sickness of Mrs. May's father, an aged man, they felt
constrained to remain with him for as long a time as pos-
sible after the funeral of their mother, who died while
they were en route from Lincoln.   They testify further
that they prolonged their stay in the hope of being able
to secure, through friends of high standing, financially,
with whom they had had extensive dealings and an un-
impaired credit, the funds needed by them at a low rate
of interest, and that they were continuously engaged in

their effort to accomplish such purpose until their return to Lincoln early in the month of February, 1894. They deny *seriatim* the several allegations of the affidavit for attachment and state that they had no intention of abandoning their residence in Lincoln; that they have neither absconded nor left the county of their residence in order to avoid the service of process; that they have not concealed any of their property or converted it into money for the purpose of placing it beyond the reach of their creditors; and that they have never removed or disposed of their property, or any part thereof, with intent to defraud their creditors. On the other hand, they testify that all the property possessed by them, the accumulation of their twenty-five years of active business life, was, during the entire period of their absence from the state, within the reach of creditors. Defendants, previous to their departure from Lincoln, caused to be packed, in apparent condition for shipment, the stock of clothing above mentioned, two of the fifty-seven boxes and trunks used for such purpose being marked with the address of a relative in the city of New York. But that seemingly suspicious circumstance is explained by the fact, as testified to by them, that the clothing in question was what is known as "job lot," held for sale or exchange at wholesale for cash or lands; that it was by them packed in the manner indicated for the purpose of preservation only, and that the boxes bearing the address aforesaid contained their wearing apparel and a few presents intended for relatives in New York. We cannot, upon the evidence, say that the district court erred in discharging the attachment. It is a rule often asserted by this court that an order granting or denying a motion to discharge an attachment, based upon conflicting proofs, will not be reversed unless manifestly wrong. (*Mayer v. Zingre*, 18 Neb., 458; *Dolan v. Armstrong*, 35 Neb., 339; *Whipple v. Hill*, 36 Neb., 720.)

It was held in *Wood v. Roeder*, 45 Neb., 311, that the word "residence," as used in the statute, is synonymous

with the term "domicile," and that the residence or domicile of the defendant is, for the purpose of jurisdiction over his person, that place where he has a fixed and permanent abode, and to which, when absent, he has the intention of returning. It was further said that in order to effect a change of domicile there must be not alone a change of residence, but an intention to permanently abandon the former home; and that the mere residing at a different place, although evidence of the required intention, does not *per se* amount to such a change.

We are aware that a distinction has, by some courts, been recognized between the legal and actual residence of debtor, the latter in the jurisdictions referred to being regarded as his domicile, within the meaning of the common law, and not the residence contemplated by statute. It is for instance said by Collins, J., in *Lawson v. Adlard*, 46 Minn., 243, that "in construing statutes relating to attachment of the property of non-residents a wide distinction has been recognized between an actual residence and a legal residence, * * * the word 'residence' being construed in its popular sense as the act of abiding or dwelling in a place for some continuance of time." We prefer, however, to regard the rule applicable in all such cases as one of evidence, rather than of substantive law, since, as said in a recent valuable work (1 Shinn, Attachment & Garnishment, sec. 90), "The question of residence, within the meaning of the attachment law, is one of intention to be deduced from the facts and circumstances of each case." The sound rule is believed to be that one who acquires a residence in a given place, within the meaning of the statutes regulating attachment and garnishment, is presumed to have abandoned his former domicile. Such a solution is altogether reasonable and results logically from the judicial discussion of the subject, while it possesses the additional merit of avoiding the solecism whereby a debtor is permitted to have a residence in one state and at the same time a domicile in another.

In *Lawson v. Adlard, supra,* which is entitled to rank as a leading case of its class, we observe the following language: "The absence must be so protracted as to amount to a prevention of legal remedy by ordinary process and of such a nature that the debtor cannot longer be deemed an actual resident; and as a mere casual or temporary absence will not render his property subject to attachment, so the mere fact that he is occasionally and transiently within the state will not relieve him from the charge of having become a non-resident."

*Keller v. Carr,* 40 Minn., 428, arose out of a state of facts strikingly similar to those here presented. The defendant therein, a single woman, having packed and stored her personal property, with the exception of her wearing apparel, left the state on the 7th day of June, going to the city of Chicago on business and from there to Canada for the purpose of visiting relatives, intending to return to her home in Minneapolis on the completion of her visit. It did not appear how long she intended to remain in Canada, except that she did not return to Minneapolis until the 15th day of October, her absence having been protracted beyond the period intended by reason of the sickness of her mother. The court, by Mitchell, J., reversing an order of the district court refusing to discharge an attachment against the defendant on the ground of non-residence, say: "No precise or definite rule can be laid down as to the exact duration of the absence which will render a person a non-resident. Each case must be governed somewhat by its own particular facts. *  *  *  In this case the defendant was absent prior to the attachment only about three months, and altogether, only about four months, and this, it appears, was longer than she contemplated when she left. And while the important inquiry is not whether she had acquired a place of residence abroad, but whether she had ceased to be an actual resident of this state, it is important as bearing on the latter question, that defendant had not only acquired no residence out of the state, but the purpose of her absence was

not such as to require or even admit of her acquiring it. * * * Such an absence from the state was not materially different in its nature from that of hundreds of people who temporarily close up their dwellings and go off south or east for health or pleasure for weeks or even months at a time. We think it never occurred to the bar of the state that such persons during such an absence were non-residents, and their property subject to attachment. To so hold would in view of the social and business habits of the people in this age of travel lead to very serious results."

In *Stafford v. Mills*, 31 Atl. Rep. [N. J.], 1023, it is said: "Mere inconvenience in the service of summons or other process furnishes no reason why an attachment should issue against one as a non-resident debtor. Temporary absences for business or pleasure is not an abandonment of one's abode or place of residence." (See, also, to the same effect *Wells v. People*, 44 Ill., 40; *Chariton County v. Moberly*, 59 Mo., 238; *Ritler v. Phœnix Mutual Ins. Co.*, 32 Kan., 403; Kneeland, Attachment, sec. 196; 1 Shinn, Attachment & Garnishment, sec. 90 *et seq.*)

The evidence bearing upon the intention of the defendants is, as may be inferred, conflicting; but the general finding of the district court ascribes to them honesty of purpose in their business affairs, as well as an intention to return to their home in Lincoln upon the termination of their visit. It follows that the order discharging the attachment should be affirmed.

ORDER AFFIRMED.