## CHARLESTON.

KANAWHA BANKING & TRUST COMPANY *v.* EDITH R. SWISHER

(No. 6177)

Submitted April 17, 1928.    Decided April 24, 1928.

NON-RESIDENT—*Debtor Domiciled in This State Temporarily Absent for Purpose of Attending Sick Member of Family Not Non-resident Within Meaning of Attachment Laws.*

A debtor domiciled in this state who is temporarily absent for the purpose of attending a sick member of his family is not a non-resident within the meaning of the attachment laws.

Appeal from Circuit Court, Kanawha County.

Decree for Kanawha Banking & Trust Company and Edith R. Swisher appeals.

*Reversed and remanded.*

*Price, Smith & Spilman,* for appellee.
*Brown, Jackson & Knight,* for appellant.

LITZ, JUDGE:

The defendant, Edith R. Swisher, appeals from a decree of the circuit court sustaining an attachment issued against her estate (November 23, 1926) on the ground of non-residence. Upon a trial by jury of the issue, as to whether she was a non-resident of the State at the time of the issuance of the attachment, the trial court directed a verdict in favor of the plaintiff.

The defendant is the widow of the late Charles W. Swisher. She was reared from childhood in West Virginia, living in the city of Charleston with her family for many years immediately preceding the month of March, 1926, when she left Charleston for a brief stay with her husband at Hot Springs, Arkansas, where it was hoped that he might obtain relief from a serious malady afflicting him. His condition becoming gradually more serious, however, after remaining a while at

this health resort and acting on medical advice, she took him
to North Carolina and from there to Walter Reed Hospital
in Washington, D. C., where he died in April, 1927. She
owns a residence on Virginia street of Charleston in which
she formerly resided but which for several years has been
rented to others; and at the time of leaving with her husband,
was occupying, with her married son, an apartment on Quar-
rier street of Charleston, containing all of her household
goods and personal belongings. Expecting to return within
a very short while, she left the apartment in charge of her
son who occupied the same until August or September 1926,
when he, as her agent, leased it by the month to another.
She has retained this apartment as her only fixed place of resi-
dence, although unable, on account of the continued illness
of her husband, necessitating her constant attendance upon
him, to return to Charleston until after his death.

The plaintiff claims that the court was justified in directing
a verdict in its favor, upon the theory that a debtor is a
non-resident in contemplation of the attachment laws when-
ever it is not possible to serve him with personal or substituted
process within the State. *Burt* v. *Allen,* 48 W. Va. 154, is
relied on as authority for this rule. That case decides a resi-
dent debtor becomes a non-resident, for the purpose of attach-
ment, as soon as he starts from West Virginia with a fixed
intention to reside outside the State permanently. The case
is also cited by the defendant to sustain her contention that
a resident debtor does not become such non-resident by leav-
ing the State temporarily for a brief absence on account of
the illness of a member of his family. Judge BRANNON in
writing the opinion of the Court said: "Under our attach-
ment statute giving an attachment on the ground that a
party 'is a non-resident of this State,' does a person become
a non-resident the very instant he starts upon his removal
with fixed intention of abandoning his residence in this
State and residing in another State? There must be two
things to change a man from a resident to a non-resident,
namely, intent and act. What he does must be *animo et
acto,* that is by act and with intent. Mere intent to remove
will not alone do; there must be, in addition to intention, an

act in the way of consummating that intention.   The intention must be to change his residence from this State to residence out of this State.   Mere going away temporarily, or without set purpose to abandon the former residence here, is not enough; it must be with fixed and definite design to give up residence here and assume one outside of the State. * * * Now, I say that the reason as given in the books for the attachment is, generally speaking, because by reason of the debtor's absence from his usual place of abode and his abandonment of it, service of process and ordinary procedure are prevented.   Such being the reason for the allowance of an attachment against a non-resident, it applies as well the moment he commences his journey as after he crosses the state line.   He is not at home to be served with process and for judgment.   The creditor has no safety but to seize his property by attachment.''

*Lyon* v. *Vance,* 46 W. Va. 781, point 2 Syl., decides: ''In order that a person may become a non-resident of the State, it is necessary that he should leave the State, with the intention of remaining absent therefrom.''

In an extended annotation, 26 A. L. R. 180, it is stated: ''One domiciled in a state who is temporarily absent on business or pleasure is not a non-resident within the meaning of the attachment laws.   Citing *Lyon* v. *Vance, supra,* and other cases from the states of Arkansas, Georgia, Illinois, Kansas, Louisiana, Nebraska, New York, Pennsylvania, Tennessee and Wisconsin.

Reversing the ruling of the lower court, the opinion in the case of *Keller* v. *Carr,* 40 Minn. 428, 42 N. W. 292, states: ''From his language we infer that the learned District Judge adopted the view that the fact that the defendant had, during her absence, no residence or place of abode, in the State, where a summons could be served on her, constituted her a non-resident within the meaning of the statute.   According to our views already expressed, this could not be conclusive of the question.   No precise or definite rule can be laid down as to the exact duration of the absence which will render a person a non-resident.   Each case must be governed somewhat by its own particular facts.   The question is whether the

debtor has become an actual non-resident within the meaning of that term,- as we have attempted to define it. In determining this, there should be considered not only the duration of the absence but its nature and purpose. In this case the defendant was absent prior to the attachment only about three months, and all together only about four months, and this, it appears, was longer than she contemplated when she left. And while the important inquiry is not whether she had acquired a place of residence abroad, but whether she had ceased to be an actual resident of this State, it is important as bearing on the latter question, that defendant had not only acquired no residence out of the State, but the purpose of her absence was not such as to acquire it or even admit of her acquiring it. What she contemplated was a brief stay in Chicago to adjust some business with an insurance company, and then a visit to her mother in Canada. Such an absence from the State was not materially different in its nature from that of hundreds of people who temporarily close up their dwellings and then go south or east for health or pleasure for weeks or even months at a time. We think it never occurred to the Bar of the State that such persons, during such absence, were non-residents, and their property subject to attachment. To so hold would, in view of social and business habits of people in this age of travel, lead to very serious results.''

We are of the opinion that the evidence is insufficient to establish the alleged non-residence of the defendant at the time of the attachment.

The decree is therefore reversed and the cause remanded.

*Reversed and remanded.*