EDGAR B. LeFEVRE *v.* HALLIE M. LeFEVRE *et al.*

(No. 9245)

Submitted January 20, 1942. Decided March 3, 1942.

Kenna, Judge, and Fox, President, dissenting.

*Charles G. Gain* and *A. H. Shipper*, for appellant.
*J. O. Henson* and *Stephen Ailes*, for appellee.

Lovins, Judge:

Edgar B. LeFevre instituted a chancery suit in the Circuit Court of Berkeley County against Hallie M. LeFevre and others, on July 17, 1940, and on the same date filed his affidavit in support of an order of attachment against defendant, Hallie M. LeFevre, designating the Aetna Casualty & Surety Company and Hugh S. Byrer as garnishees. Assigned in the affidavit as the sole ground for attachment and garnishment was the non-residence of Hallie M. LeFevre. An answer was filed denying the existence of the ground assigned, and, under the provisions of Code, 38-7-33, a jury trial was had on the issue thus raised. After all the evidence had been introduced, the trial court stated that "There is no substantial conflict in the evidence which the jury would have to determine in this case", and, proceeding to determine the legal questions as to the non-residence of Hallie M. LeFevre presented by the evidence, directed the jury to find for the plaintiff. From that action of the trial court, as evidenced by the decree thereupon entered finding that "Hallie M. LeFevre was a non-resident of the State of West Virginia

at the time of the attachment herein issued", defendant appeals.

Hallie M. LeFevre came to this State in 1913, when she married O. B. LeFevre, the father of plaintiff, Dr. E. B. LeFevre. They resided at Bunker Hill in Berkeley County. Mr. LeFevre died in 1927, and defendant continued to live at the home farm until 1935, when the devisee of the property required her to vacate. She went from there to the residence of Mr. and Mrs. Robert Lemen, about one mile from Bunker Hill, where she lived for one winter. Mrs. Lemen testified that when Mrs. LeFevre came to her home, she asked to rent a room but that they allowed Mrs. LeFevre to make her home there without recompense. Some time in 1936 or 1937 the Lemens moved and rented their home, and some household furniture belonging to Mrs. LeFevre remained there until 1939 or 1940, when it was moved to a barn on the Drinker farm in Berkeley County, which had been assigned to her as dower. Since leaving the Lemen home, defendant has had no permanent place of abode, but has been the guest of relatives in Pennsylvania and Maryland, returning to this State for short visits with friends, as well as weekly or bi-weekly trips to Bunker Hill, for the day only. On such trips she would come to Bunker Hill by automobile bearing a Pennsylvania or Maryland license. Mrs. LeFevre was registered as a voter in Berkeley County in March, 1940, and voted in the primary election of May in that year. She testified that she has never had any intention of giving up her residence in West Virginia and that the only factor which prevented her from establishing a home in Berkeley County was a lack of funds; she states emphatically that her home is at Bunker Hill in Berkeley County. Tax receipts were produced showing that Mrs. LeFevre paid real property taxes in Berkeley County in the year 1939 and for the first half of 1940.

Defendant rented a room at 28 North Locust Street in Hagerstown, Maryland, from time to time, and it was there that attorneys interested in this litigation found her in the summer of 1940, about the time the attachment proceeding was instituted. Of this address, Mrs. LeFevre

stated, "I have access to that room when I need it." One of the attorneys, H. S. Byrer, stated that when he wrote her a letter, several copies would be made and mailed to Bunker Hill, Hagerstown, Greencastle, Pennsylvania, and another point in Maryland. Defendants' testimony indicates that, in all, there are about ten or eleven different residences where she frequently visits, including the homes of Katie Lemen, Mrs. Kent Miller and a Mrs. Flagg in Berkeley County.

It appears that on numerous occasions during the years 1938-1941, the Sheriff of Berkeley County has attempted to serve defendant with process in litigation pertaining to the settlement of her husband's estate and has never been able to do so. In this proceeding, the defendant was personally served on September 30, 1940, when she appeared at the sheriff's office with her attorney. Mrs. LeFevre was present during the taking of testimony before a commissioner in chancery in Berkeley County on thirty-five or forty different occasions in matters pertaining to the estate; for these hearings she came from Maryland, practically all of the time, with an attorney from Hagerstown. The commissioner, R. H. Boyd, testified that he communicated with her at Half Way, Maryland, or through the attorney in Hagerstown.

There is only one question presented by this record. Was Hallie M. LeFevre a non-resident of this State, as a matter of law within the meaning of the attachment statute, when the attachment was issued? Code, 38-7-2. Application of the statutory remedy by attachment, being in derogation of common-law, summary in its effect and liable to abuse and oppressive use, will be carefully guarded by the courts and confined strictly within the limits prescribed by the statute. *DeLung* v. *Baer*, 118 W. Va. 147, 189 S. E. 94; *Delaplain* v. *Armstrong*, 21 W. Va. 211.

This Court has held that a resident of the State may become a non-resident, within the meaning of the attachment statute, by leaving the State with the intention of changing his residence from within the State to residence

elsewhere. *Lyon* v. *Vance,* 46 W. Va. 781, 34 S. E. 761; *Burt* v. *Allen,* 48 W. Va. 154, 35 S. E. 990, 50 L. R. A. 284, 86 Am. St. Rep. 29; *Banking and Trust Co.* v. *Swisher,* 105 W. Va. 476, 144 S. E. 294. Each case involving a question of non-residence under the attachment statute must be governed somewhat by its own particular facts. *Banking and Trust Co.* v. *Swisher, supra; Keller* v. *Carr,* 40 Minn. 428, 42 N. W. 292.

There is no doubt that Mrs. LeFevre was a resident of West Virginia during the lifetime of her husband and up until the time she left the Lemen home in 1936. It is true that she left this State and visited relatives in the States of Pennsylvania and Maryland, though the duration of such visits is not clear from the record. It is also true that she was living in Hagerstown, Maryland, about the time this proceeding was instituted, and that the Sheriff of Berkeley County was not able to serve her personally with process, until she appeared voluntarily at his office. These facts and the testimony relating to correspondence with her and her living in Maryland at the time of the hearings before the commissioner in chancery, all have some weight, but are not conclusive. On the other hand, she owned land situate in Berkeley County, her furniture was stored therein, she visited there from time to time and came there frequently to attend to matters pertaining to her property, and voted there. These facts, likewise, are not conclusive, but they do indicate that her absences from this State were temporary and tend to support her declared intention to establish a place of residence in this State. While her intention to retain her residence in West Virginia is not sufficient, without the support of the other facts stated herein, it does show the *animus revertendi* necessary for retaining residence within the meaning of the attachment statute. The duration of her absences is not controlling, as we view this question, as it has been held: "No precise or definite rule can be laid down as to the exact duration of the absence which will render a person a non-resident." *Trust Co.* v. *Swisher, supra,* quoting from *Keller* v. *Carr, supra.* Moreover, mere absence from the State, under the

rule hereinbefore stated, is not sufficient to place a former resident in the category of a non-resident. *Lyon* v. *Vance, supra; Burt* v. *Allen, supra; Banking and Trust Co.* v. *Swisher, supra.* There is no distinct showing that her absences from the State were such as to make her a non-resident, as a matter of law.

The burden of proof was upon the appellee to establish nonresidence in this case. Code, 38-7-33. We express no opinion as to whether he has sustained that burden, but we think the jury was entitled, under the state of this record, to draw its own inferences, under proper instructions, as to whether Mrs. LeFevre was a non-resident. Certainly we cannot say, under the decisions of this Court hereinbefore cited, that the record shows that she was a non-resident, as a matter of law. Therefore, we believe that the action of the trial chancellor in directing a verdict in favor of appellee was erroneous.

The ruling and decree of the trial chancellor are reversed and the cause remanded for proceedings consonant herewith.

*Reversed and remanded.*

KENNA, JUDGE, dissenting:

Of course, under our West Virginia cases a strict compliance with the statutory requirement is exacted before a valid attachment may issue, this Court having so stated in *Delaplain* v. *Armstrong,* 21 W. Va. 211, the attachment there being based upon fraudulent conduct was not sustained by the factual statement contained in the affidavit, and *DeLung* v. *Baer,* 118 W. Va. 147, 189 S. E. 94, which was a divorce proceeding not included in the attachment statute. I am also aware of Judge Brannon's rather labored discussion in *Miller et al.* v. *Zeigler,* 44 W. Va. 484, 29 S. E. 981, 982, 67 Am. St. Rep. 777, a proceeding based upon attachment, the order of which when levied, the clerk had not signed. Yet this Court sustained the attachment and levy under a statute said to be in derogation of the common law, and hence strictly construed. (As to the origin of the law of attachment, see 4 Am. Jur. 563.) In the *Zeigler* opinion, Judge Brannon, in speaking for the

Court of the attachment statute, said: "Why technicality should override justice, in even attachment cases, I cannot understand."

I believe that the majority of the Court have not sufficiently differentiated between the legal meaning of the words "residence" and "domicile", and the extent to which intention enters into fixing of the distinct statuses indicated. There are what I regard as well considered cases holding that intention is not an element in the determination of residence, but that it depends only upon the physical location of the person, and the plain weight of authority is to the effect that while intention may be considered as a guiding factor when the circumstances are not decisive, it is certainly not controlling. Residence and domicile may differ, domicile being subject to a number of rules that do not enter into the determination of residence, such, for example, as that governing the domicile of married women. Subject to those rules, intention is necessary in the fixing of a person's domicile, and in its absence, there can be no change. Not so as to residence.

The terms under consideration are used with different meanings, dependent upon the subject matter, and it is my belief that it was the purpose of the Legislature, influenced, perhaps, by the great percentage of "foreign" capital used in the development of this state, in providing for attachment against non-residents, to give West Virginians a method of proceeding against persons with property in this state who were not regularly subject to the personal service or substituted service of process. *Andrews v. Mundy*, 36 W. Va. 22, 29, 14 S. E. 414. I believe the Legislature itself emphasizes this fact by making the property of the person, even though he may be a resident, who is concealing himself for the purpose of avoiding the service of process, without more, subject to attachment. Code, 38-7-2. This being so, the correct interpretation of our attachment statute would seem to require that our statutes prescribing the method in which process may be served should be examined, and it is then seen that in the absence of personal service, substituted service may be resorted to at the defendant's "usual place of

abode." Code, 56-2-1. Considering the two statutes together would result in considering whether or not a person had a usual place of abode in West Virginia for the service of process, in reaching a determination whether the same person was a resident or non-resident of this state under the attachment statute. Certainly, it is the general purpose of the law to prevent the evasion of process, and to devise an effective method by which the individual, or his property, may be located for the purpose of service. I believe that in applying that principle to the facts in this case, Mrs. LeFevre was plainly shown to have been a non-resident.

The majority opinion states that she left the Lemen home in 1936, stored her furniture and spent her time with relatives in Pennsylvania and Maryland; that she was living in Hagerstown, Maryland; and that the sheriff of Berkeley County was unable to obtain personal service until she appeared at his office voluntarily, driving a Maryland automobile. She did vote in Berkeley County, it not appearing that her right to do so was challenged, and often visited that county, but as far as her declared intention to establish a place of residence in this state is concerned, I am under the impression that the question here is whether an established residence was abandoned, and I do not see quite how the *animus revertendi* would permit the retention of a residence, not domicile, in West Virginia by a person who had given up her residence here by living in Hagerstown, Maryland. Of course, if Mrs. LeFevre had maintained rooms at Bunker Hill, particularly if they could be said to have been her usual place of abode, it might be that she could be treated as a resident of this state in spite of the fact that she also maintained an establishment at Hagerstown, Maryland. But we are not confronted with those circumstances in order to decide whether under the showing in this case she was, as a matter of law, a non-resident, it being shown that she did not maintain anything approaching an establishment in this state at the time.

For the foregoing reasons, I respectfully dissent. Judge Fox authorizes me to announce his concurrence herein.