## Case No. 3,020.

### COLLINSON v. TEAL et al.

[4 Sawy. 241;[1] 9 Chi. Leg. News, 272.]

Circuit Court, D. Oregon.    April 19, 1877.

SERVICE OF SUMMONS ON NON-RESIDENT.

A person temporarily residing or sojourning at Honolulu, as United States commissioner to the Hawaiian government, is a non-resident of the state, within the meaning of subdivision 3 of section 30 of the Oregon Code of 1854, authorizing the service of summons by publication, in certain cases where the defendant is not a resident of the territory.

[Cited in Woolridge v. McKenna, 8 Fed. 684.]

[Bill by Thomas Collinson against Joseph Teal and others.]

W. W. Page and G. W. Yocum, for plaintiff.

W. Lair Hill and W. H. Effinger, for defendants.

DEADY, District Judge. This suit is brought by the complainant, as a citizen of the state of California, against the defendants, as citizens of the state of Oregon, to have the latter declared to be the trustees of the plaintiff for the south half of lot 7 in block 2, in the town of Portland, and to execute a deed of release to him for the same. The bill alleges that on November 15, 1859, T. J. Dryer being "the owner of and in possession of" the premises in controversy, mortgaged the same to R. McFeely, to secure the payment of a note given by said Dryer to said McFeely for $2,000, with interest at the rate of three per centum per month; that on June 8, 1861, said McFeely commenced a suit in the circuit court for Multnomah county, against said Dryer, to foreclose said mortgage, at which time the said Dryer was "sojourning at Honolulu, in the Hawaiian kingdom, only and solely for the purpose of discharging the duties of his office" of United States commissioner to that government, "but had not then lost or abandoned his residence in the state of Oregon," which fact "was well known to said McFeely and his attorneys;" that an attempt was made to serve a summons in said suit upon said Dryer, by publication, notwithstanding his said residence in Oregon, but that said Dryer was not "served with process or summons in person, or by publication, whereby the said circuit court could or did obtain jurisdiction" of the defendant, or subject matter of said suit, "nor did the said Dryer enter his appearance" therein; that on November 16, 1861, said circuit court gave a decree, "without jurisdiction in the premises," against said Dryer for the sum of $1955 87, and for the sale of said mortgaged premises, in pursuance of which the same were sold on January 22, 1862, to John Green, who afterward

conveyed to H. C. Leonard, who, on March 10, 1869, quitclaimed to the defendants, who by virtue of the premises, thereupon went into possession; and that on November 9, 1874, said Dryer conveyed the premises to the complainant.

A copy of the decree of foreclosure and sale is annexed to the bill and made a part of it, from which it appears that Dryer was "duly served with process by publication of notice and by mail, as the law directs." The bill also alleges that on March 11, 1869, the defendants commenced a suit, in the circuit court aforesaid, "against the lawful heirs of Daniel H. Lownsdale, deceased, to whom a patent for a tract of land," including the premises in controversy, "had been issued," in which they claimed that, by virtue of the aforesaid proceedings and conveyances, they had become the owners of the premises; that said Lownsdale had made such agreements with said Dryer and the latter's grantors "that neither he nor his heirs had any just or equitable claim to said lot;" that the claim of said heirs "was fraudulent and void," and "a cloud upon the title" of the defendants, derived from said sheriff's sale, and praying a decree quieting their title, and that the defendants be declared the owners of the premises in fee-simple, and that said heirs be enjoined from setting up any claim to the premises; that, upon the trial of said cause, said circuit court found the claim of the defendants to be true, and adjudged that said heirs had no interest in the premises, and that they should convey the same to the defendants, which was duly done; that thereupon said defendants "became the trustees of whatever right they acquired thereby, for the said Dryer and his grantees, and now are the trustees for this complainant, but wrongfully and unlawfully claim and set up a right in themselves as against this complainant in and to said real estate, which is of the value of $15,000; and that on November 9, 1874, said Dryer duly conveyed the premises to the complainant." The defendants demur to the bill, and upon the argument make the following points: (1) The bill is insufficient to entitle the complainant to any relief; and, (2) the suit is barred by lapse of time.

The claim to the relief sought by the bill rests ultimately upon the allegation that the court did not acquire jurisdiction of the person of the mortgagee in the suit for foreclosure. Upon this point, it appears from the bill that Dryer, while absent from this state, and residing at Honolulu as United States commissioner, was served in said suit, by publication, as a non-resident. It is also stated in the bill that, in fact, Dryer was only "sojourning at Honolulu" as such commissioner, "but had not lost or abandoned his residence in this state;" but this is the complainant's conclusion from the facts, rather than a statement of a fact.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

Under the Code of 1854, section 30, which was in force until May 1, 1863, it was provided that service of the summons might be made upon a defendant by· publication among others, in the following case: "When the defendant is not a resident of the territory, but has property therein, and the action arises on contract, and the court has jurisdiction of the subject of the action."

The suit of McFeely v. Dryer [Case No. 8,791], arose upon a contract, and the subject of it was within the jurisdiction of the court. If, then, Dryer was a non-resident of the state at the time of the publication, within the meaning of the act, the court acquired jurisdiction. Literally, a resident is one who sits, abides, inhabits or dwells in a certain place. A person sojourning—which is only a synonym for residing—at Honolulu, is prima facie residing there, and cannot be a resident of Oregon at the same time. The word is of a narrower signification than domicile, and, like the word "inhabitant," implies a bodily presence. Considered with reference to the purpose of the statute —the mischief to be remedied—its meaning is the same. It was enacted to give this class of creditors, whose debtors were absent from the state, and could not therefore be personally served with process within it, a means of enforcing their securities and so far collecting their debts.

In Roosevelt v. Kellogg, 20 Johns. 210, the court held that an averment in a plea of discharge under the insolvent act, that the insolvent was a resident of the county in which the application for the discharge was made, was equivalent to stating that he was an inhabitant of such place, saying: "These words signify the same thing; a person resident is defined to be one 'dwelling or having his abode in any place;' an inhabitant, 'one that resides in a place.'"

In Re Thompson, 1 Wend. 44, it was held that under the act, allowing an attachment against the property of a debtor who resides out of the state, that an attachment might issue against the estate of a debtor who was resident abroad permanently or temporarily, the court saying: "The object of the statute was to authorize creditors to prosecute their debts when their debtors were abroad; and whether their absence from the state is permanent or temporary, whether it is voluntary or involuntary, the reason for giving this remedy to the creditor is the same."

In Frost v. Bisbin, 19 Wend. 12, it was held that a person who had a domicile within the state, but carried on a business without, the same which he superintended personally, was liable to arrest on civil process as a non-resident. In Haggart v. Morgan, 5 N. Y. 428, a case arising under the attachment law, it was held that a person may be a non-resident of the state within the meaning of the statute, allowing an attachment against the property of non-resident debtors, although his domicile is within the state; and that actual non-residence, without regard to the domicile of the debtor, is what is contemplated by the statute. See, also, upon the subject of residence, In re Wrigley, 4 Wend. 603, 8 Wend. 134. It is not necessary to consider the other questions made in support of the demurrer. The want of jurisdiction alleged in the bill not appearing from the facts stated, but the contrary, the demurrer is sustained.