# NEWMAN v. UNITED STATES EX REL. FRIZZELL.

QUO WARRANTO; EVIDENCE; OFFICERS; USURPATION OF OFFICE; APPEAL AND ERROR; EVIDENCE; HARMLESS ERROR; TRIAL; BURDEN OF PROOF; RIGHT TO OPEN AND CLOSE; INSTRUCTIONS TO JURY; ESTOPPEL; RESIDENCE.

1. A transcript of testimony taken before a committee of the United States Senate while considering the confirmation of the President's nomination of an appointee to the office of commissioner of the District of Columbia is incompetent and irrelevant in an action in quo warranto challenging the latter's residential qualifications to hold the office.

2. The respondent in an action in quo warranto challenging his residential qualifications to hold the office of commissioner of the District of Columbia is not prejudiced by the refusal to admit in evidence a transcript of testimony taken before a committee of the United States Senate while considering the confirmation of his nomination to the office by the President, where the transcript contains, so far as it goes, the same testimony as that given by the respondent in the action.

3. Mere possession of an office, accompanied by a commission from the proper appointing power, creates a presumption that the incumbent possesses the legal qualifications to hold the office.

4. A burden, carrying with it the duty to open and close the evidence and the argument, rests upon the relator in an action in quo warranto to oust one from an office to which he has been appointed by the proper appointing power, of overcoming the presumption that such incumbent possesses the legal qualifications to hold the office.

5. An incumbent of an office under a commission from the proper appointing power is not, in an action in quo warranto to oust him, prejudiced by the granting to the relator of the right to open and close

the evidence and the argument as incident to his burden of overcoming the presumption that the incumbent possesses the legal qualifications to hold the office.

6. Evidence relative to a party's registering at hotels as from a certain city is competent, as tending to establish that his actual residence is there, in an action involving his residential qualifications for office, where the address given corresponds to his alleged actual place of abode.

7. A party to an action is not in position to complain of an instruction that a fact is to be considered by the jury, but is entitled to very little weight, where he interposed no objection to the admission of the evidence upon which the instruction is based.

8. Submission of evidence, admitted without objection, to the jury, by charging that it is to be considered, but is to be given little weight, upon an unimportant question in the action, is not prejudicial error, where the evidence is competent and relevant to the principal issue in the case.

9. Retention by a former resident of his domicil in the city of Washington does not make him a resident of the District of Columbia within the meaning of the act of June 11, 1878, which requires actual residence in the District as a qualification for the office of commissioner of the District.    (Distinguishing *Thompson* v. *Thompson,* 35 App. D. C. 14.)

10. The real place of abode is the sort of residence Congress had in mind when it embodied the requirement of actual residence in the District of Columbia, in the provision of the act of June 11, 1878, prescribing the qualifications for the office of commissioner of the District; and a person to meet the requirement must reside in fact within the District, and not merely in contemplation of law.

11. A person is not an actual resident of the District of Columbia for three years next prior to his appointment to the office of commissioner of the District, as required by the provision of the act of Congress of June 11, 1878, prescribing the qualifications for the office, where, during such period, he moves, with his family, from the District, without retaining any place of abode there, to a distant city, to perform work there, requiring an indefinite time, with the understanding that he should return upon its completion, rents a furnished appartment in that city, having no household furniture, sends his boy to one of its public schools, and registers as from that city at hotels while traveling, and where his name appears, though unknown to him, in its directory, although he does not register or vote there, and regards the city of Washington as his

home, and intends to, and does, return there as soon as his work permits. (Mr. Chief Justice SHEPARD dissenting.)

No. 2741.   Submitted December 8, 1914.   Decided January 4, 1915.

HEARING on an appeal by the respondent from a judgment of the supreme court of the District of Columbia in a quo warranto proceeding ousting him from the office of commissioner of the District of Columbia.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action in quo warranto brought by relator, William J. Frizzell a citizen and taxpayer, challenging the right of respondent, Oliver P. Newman, to hold the office of civil commissioner of the District of Columbia.

The petition sets forth that by the act of Congress of June 11, 1878 [20 Stat. at L. 102, chap. 180], providing a permanent form of government for the District of Columbia, the President, by and with the advice and consent of the Senate, was authorized to appoint two persons from civil life, who, with an officer of the corps of engineers of the United States Army, should be commissioners of the District of Columbia. The act provided that "the two persons appointed from civil life shall, at the time of their appointment, be citizens of the United States, and shall have been actual residents of the District of Columbia for three years next before their appointment, and have, during that period, claimed residence nowhere else."

It is further alleged that on June 26, 1913, the President appointed respondent Newman to the office of civil commissioner; that he was thereafter confirmed by the Senate, and that, on July 19, 1913, he took the prescribed oath and entered upon the duties of his office, which he has since held. It is alleged that respondent was not qualified in law to receive such appointment; that he has unlawfully assumed and usurped the said office, and is not lawfully entitled to exercise the functions and enjoy the emoluments thereof; that, at the time of his appointment to said office, he had not been an actual resident of the

District of Columbia for three years prior to his appointment, and that, before his appointment, he had claimed residence at Chicago, Illinois, and at Princeton, New Jersey.

On this petition a writ was issued requiring respondent to show by what warrant he claimed the right to hold the office of commissioner of the District of Columbia. A demurrer and motion to quash were filed, which were sustained, and the petition dismissed. From this an appeal was taken by relator to this court, and the judgment of the court below was reversed. *United States ex rel. Frizzell* v. *Newman,* 42 App. D. C. 78. The cause was remanded to the supreme court of the District of Columbia, and came on for trial before a jury. A verdict was returned finding defendant guilty of the act of usurping the office of commissioner. A motion for new trial was filed and overruled. Motions in arrest of judgment and for judgment *non obstante veredicto* were filed by respondent and denied by the court. The judgment of ouster was entered, from which this appeal was taken.

It appears from the evidence that respondent first came to Washington in July, 1901, remaining here until 1902, when he went to New Mexico on account of ill health, where he remained until April, 1904. He resided in different cities of the country until March, 1910, when he returned to Washington, and entered the employ of the Washington Times. With his family he took apartments at the Kenesaw Apartment, where he remained during the summer of 1910, removing in the fall to the Westminster Apartment, where he resided until July, 1911, when, with his family, he removed to Chicago. It appears that he entered into the employment of the Newspaper Enterprise Association to perform newspaper work in Chicago in connection with the approaching presidential campaign, with the understanding, according to his own testimony, that, when his work was completed in Chicago, he should be returned to Washington. No time seems to have been fixed for completion of the work in Chicago.

Respondent testified that, while he resided in Chicago, "his household consisted of really two families, witness's wife, boy,

and himself, and wife's father and mother, all occupying the same dwelling. Took a furnished apartment, having no household furniture at all. Sent the boy to the public school in Chicago, recollection is that the mother entered him. Recalled going with her one day to see one of the assistant superintendents about which school he should enter, but recollection is that was the only information he had about it. * * * They lived first in a furnished flat; then a little family hotel; then a boarding house; then a furnished flat in Evanston." It further appears from his own testimony that he never registered or voted in Chicago. His name and address appeared in the city directory of Chicago for the year 1912. He, however, testified that he did not know his name was in the directory until after he returned to Washington. While in Chicago he was engaged in newspaper work, and traveled about considerably, usually registering at hotels from that city, but never registering, so far as the record shows, from Washington.

In November, 1912, immediately following the presidential election, his family returned to Washington, and again took apartments at the Westminster. No place of residence had been retained by respondent in Washington during his absence, nor had he left any property or belongings here or paid any taxes. Respondent spent the winter of 1912 and 1913 at Princeton and Seagirt, New Jersey, with President-elect Wilson. He came to Washington to attend the inauguration of the President in March, 1913, when he joined his family at the Westminster, and has remained here since that date. He testified that he regarded Washington as his home, and at all times intended to return here as soon as his engagements in Chicago permitted. A number of witnesses testified to respondent's having expressed this intention to them.

*Mr. Jackson H. Ralston, Mr. William E. Richardson, Mr. G. W. Hott,* and *Mr. John W. Davis* for the appellant.

*Mr. Joseph W. Bailey, Mr. Arthur A. Birney, Mr. William J. Neale,* and *Mr. C. C. Lancaster* for the appellee.

Mr. Justice Van Orsdel delivered the opinion of the Court:

The matters disposed of in our former opinion are again advanced in this appeal. They will not be reconsidered, but we will confine ourselves to the new questions presented. Exception was taken to the ruling of the court in refusing to admit in evidence a transcript of the testimony taken before the committee of the Senate while it had under consideration the confirmation of the President's nomination of respondent to the office in question. This evidence was incompetent, and could have no relevancy to the present issue, which involves respondent's right to hold the office, and not the motives which prompted the President and the Senate in making the appointment. Besides, it is not quite clear in what respect respondent can claim injury from this ruling. The transcript offered contains, so far as it goes, the same testimony given by respondent in this case. It merely would have duplicated a portion of the evidence submitted to the jury, to no purpose except to encumber the record.

It is urged by counsel for respondent that the court erred in granting relator the right to open and close in the submission of the evidence, and the right to open and close the argument to the jury. The court properly instructed the jury that the burden of proof was upon relator. Mere possession of the office, accompanied by a commission from the proper appointing power, created a presumption that respondent possessed the legal qualifications to hold the office. The affirmative was, therefore, cast upon relator of overcoming this presumption, which, under our practice, required him to open and close the evidence and the argument. It is difficult, however, to understand just how respondent could be damaged by having the burden cast upon relator.

The form of the writ would seem to indicate that the burden is upon respondent to show his lawful possession of the office. This was the early English practice, where the writ was prerogative, and issued in the name of the King. But that practice has not been followed in this country. Here the writ has fallen

into disuse, and the proceeding is initiated by information in the nature of a civil proceeding to try the right to office. In *State ex rel. Danforth* v. *Hunton,* 28 Vt. 594, the court, considering the question of practice in quo warranto, said: "The form of the issue, requiring the defendants to show cause, would seem to indicate, in form, that the defendants would be required to go forward in the case. But it seems to us that the form of the issue in the case does not correctly define the true position of the parties, in regard to the presumption of right. The defendants are in possession of the office in question, and should be presumed regularly elected and entitled to hold until the contrary be shown. The plaintiffs, then, are bound to make a case against them, and they should go forward in the proof and in the argument." In *State ex rel. Bornefeld* v. *Kupferle,* 44 Mo. 154, 100 Am. Dec. 265, the court held an information in the nature of a writ in quo warranto to be a civil proceeding, casting the burden upon the relator to remove the presumption which exists in favor of the regularity of respondent's appointment and his right to hold the office. It was not error to require relator to go forward in the trial.

Respondent objected to the submission to the jury of evidence relative to his registering at hotels from Chicago, and in one or two instances from Princeton, New Jersey. The object of registering in hotels is to advise the hotel management of the present address of the guest, where, if necessary, he can be reached speedily, and it may, or may not, indicate his domicil or legal residence; but in all cases it should indicate his real or actual present residence. Hence, as a fact showing actual residence, if it appears that the address given corresponds to the alleged actual place of abode of the party, it is certainly competent as tending to establish that fact. In submitting this evidence the court instructed the jury: "You should take into consideration all the evidence on this intention to return, namely, what he did in Chicago, the manner in which he lived there, his activities, his name appearing in the city directory, which, while he said he was not responsible for it, is an evidentiary fact of some importance, though not great, to my mind. I also give

little weight, and I think you should give little weight, to the mere question of registration in the hotel registers from different cities. It is a fact to be considered, but I think entitled to very little weight in determining his intention to return." We agree with the court below that the evidence had little or no importance in determining the intention of respondent to return, but its effect would be different on the question of actual residence. Respondent, however, is not in position to complain of this instruction, since no objection was interposed to the admission of the evidence upon which the instruction was based. Being before the jury without objection or exception, the court disposed of the evidence in a much less prejudicial manner to respondent than was possible under the view we entertain of its competency and relevancy to the principal issue in the case.

A more difficult question is presented in the refusal of the court to instruct a verdict for respondent. Counsel for respondent requested an instruction to this effect at the conclusion of relator's testimony, and removed it when the evidence in full was concluded. Exception to the ruling of the court was taken, and this presents the chief question in the case. It goes directly to the right of respondent to hold the office to which he has been appointed. The proposition is squarely presented, whether or not respondent was an actual resident of the District of Columbia for three years prior to his appointment. It involves the difficult task of drawing the distinction (if, indeed, it can be done from the confusion of opinion) between domicil and residence.

The most accurate definition of domicil to which our attention has been called is contained in *Mitchell* v. *United States*, 21 Wall. 350, 22 L. ed. 584, where the court approves the definition from *Guier* v. *O'Daniel*, 1 Binn. 349, note, in which it is defined as "a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time." The court then defines it more elaborately, as follows: "By the term 'domicil,' in its ordinary acceptation, is meant the place where a person lives and has his home. The place where a person lives is taken to be his domicil until

facts adduced establish the contrary.   *   *   *   A domicil once acquired is presumed to continue until it is shown to have been changed.   Where a change of domicil is alleged, the burden of proving it rests upon the person making the allegation. To constitute the new domicil two things are indispensable: First, residence in the new locality; and, second, the intention to remain there.   The change cannot be made except *facto et animo*.   Both are alike necessary.   Either without the other is insufficient.   Mere absence from a fixed home, however long continued, cannot work the change.   There must be the *animus* to change the prior domicil for another.   Until the new one is acquired, the old one remains.   There principles are axiomatic in the law upon the subject."

It will be observed that to establish a domicil two things are indispensable,—residence, and the intention to remain permanently at the place where residence is established.   It logically follows, however, that there may be a residence without the intention of establishing a domicil; but, without the intention, in conjunction with the residence, there is no domicil.   And when a domicil is thus established, mere absence from it will not effect a change.   There must exist the intention before a change can be effected.   In other words, residence may exist without establishing a domicil, but domicil cannot be established without residence.   Residence may be separated from the domicil, and the domicil still remain.   But where the retention of domicil depends exclusively upon the intention to return at some indefinite time and resume residence, we think such intention must be evidenced by something more than a mere mental concept; it must be coupled with some outward manifestation indicative of a fixed purpose.   In other words, a mere floating intention to return is not sufficient to retain domicil.   "If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicil, it is to be deemed his place of domicil, notwithstanding he may entertain a floating intention to return at some future period."   Story, Confl. Laws, sec.

46.   See also *Bradstreet* v. *Bradstreet,* 7 Mackey, 229; *Ring-gold* v. *Barley,* 5 Md. 186, 59 Am. Dec. 107.

Where a person moves from his domicil, and leaves nothing behind indicating an intention to return, and establishes a fixed place of abode for himself and family in the new place of residence, it creates a presumption of change of domicil.   The rule is stated in *Ennis* v. *Smith,* 14 How. 400, 422, 14 L. ed. 472, 482, as follows: "But what amount of proof is necessary to change a domicil of origin into a prima facie domicil of choice? It is residence elsewhere, or where a person lives out of the domicil of origin.   That repels the presumption of its continuance, and casts upon him who denies the domicil of choice the burden of disproving it.   Where a person lives is taken prima facie to be his domicil, until other facts establish the contrary."

The word "residence," like "domicil," is frequently used to express different meanings according to the subject-matter.   For example, the term "residence" is construed to mean "domicil" in determining jurisdiction in divorce proceedings.   (*Atherton* v. *Atherton,* 181 U. S. 155, 45 L. ed. 794, 21 Sup. Ct. Rep. 544; *Haddock* v. *Haddock,* 201 U. S. 562, 50 L. ed. 867, 26 Sup. Ct. Rep. 525, 5 Ann. Cas. 1; *Thompson* v. *Thompson,* 35 App. D. C. 14, 226 U. S. 531, ⁕57 L. ed. 347, 33 Sup. Ct. Rep. 129; *Shaw* v. *Shaw,* 98 Mass. 158); or in ascertaining the voting residence of a citizen (*Silvey* v. *Lindsey,* 107 N. Y. 55, 13 N. E. 444; *Crawford* v. *Wilson,* 4 Barb. 505; *Thomas* v. *Warner,* 83 Md. 14, 34 Atl. 830; *Fry's Election Case,* 71 Pa. 302, 10 Am. Rep. 698; *Vanderpoel* v. *O'Hanlon,* 53 Iowa, 246, 36 Am. Rep. 216, 5 N. W. 119; *Blanchard* v. *Stearns,* 5 Met. 298); or in probate and administration (*Kennedy* v. *Ryall,* 67 N. Y. 379; *Isham* v. *Gibbons,* 1 Bradf. 69); and generally in relation to taxation.

Aside from the exceptions above cited, residence and domicil are not generally regarded as synonymous.   In the case of *Penfield* v. *Chesapeake, O. & S. W. R. Co.* 134 U. S. 351, 33 L. ed. 940, 10 Sup. Ct. Rep. 566, the court construed a statute of New York which provided that "where a cause of action ⁕ ⁕ ⁕ accrues against a person who is not then a resident of the State,

an action cannot be brought thereon in a court of the State, against him or his personal representative, after the expiration of the time limited by the laws of his residence for bringing a like action, except by a resident of the State, and in one of the following cases:    *    *    *    2. Where, before the expiration of the time so limited, the person in whose favor it originally accrued was, or became, a resident of the State." It was held that the statute contemplated that a person to come within its provisions should be an actual resident in the State. Penfield was originally a resident of New York State, but had been absent from the State for several years. At the time in question he was a resident of Missouri, but had sent his wife and family to Brooklyn, and established them in a house there. He remained in St. Louis for business reasons, intending later to join his family in New York. His right to bring the action depended upon whether the establishment of his family in New York made him a resident of that State within the statute. The court held, following a long line of decisions of the New York courts, that, though he had resided in New York prior to going to Missouri, he was not entitled to bring the action, in that he was not at the time an actual resident of New York. Distinguishing between domicil and residence, the court said: "Assuming, without deciding, that the testimony introduced for the plaintiff in the present case would warrant the impression that he had obtained a domicil in the State of New York by virtue of his wife and family, with his consent, having made their home in that State, there is nothing in the evidence which had the slightest tendency to show that his own actual residence was in the State of New York for many years prior to his going there from St. Louis in December, 1883." The opinion in this case is elaborate, and cites with approval many cases where the distinction between domicil and residence is made.

We think that, by the great weight of authority, there is a well-defined distinction between residence and domicil. In the case of *Long* v. *Ryan,* 30 Gratt. 718, the court, considering this distinction, said: "There is, however, a wide distinction between domicil and residence, recognized by the most approved

authorities everywhere. Domicil is defined to be a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time. To constitute a domicil, two things must concur—first, residence, secondly, the intention to remain there. *Pilson* v. *Bushong,* 29 Gratt. 229; *Mitchell* v. *United States,* 21 Wall. 350, 22 L. ed. 584. Domicil, therefore, means more than residence. A man may be a resident of a particular locality without having his domicil there. He can have but one domicil at one and the same time, at least for the same purpose, although he may have several residences. According to the most approved writers and lexicographers, residence is defined to be the place of abode, a 'dwelling, a habitation, the act of abiding or dwelling in a place for some continuance of time. To reside in a place is to abide, to sojourn, to dwell there permanently or for a length of time. It is to have a permanent abode for the time being, as contradistinguished from a mere temporary locality of existence. *Re Wrigley,* 8 Wend. 134, 140; 1 Am. Lead. Cas. (Hare & W.) 899, 953."

Residence, as distinguished from domicil, legal or constructive residence, implies a place of abode. Residence "imports not only personal presence in a place, but an attachment to it by those acts or habits which express the closest connection between a person and a place, as by usually sitting or lying there." *Re Collins,* 64 How. Pr. 63. It also "imports a personal presence; whereas one may have a domicil in a place from which he is absent most of the time." *The Chinese Tax Cases,* 14 Fed. 338. "Literally, a resident is one who sits, abides, inhabits, or dwells in a certain place." *Collinson* v. *Teal,* 4 Sawy. 241, Fed. Cas. No. 3,020. Or a resident is "one dwelling or having his abode in any place; an inhabitant, one that resides in a place." *Roosevelt* v. *Kellogg,* 20 Johns. 208.

The most that is claimed for respondent is that, more than three years prior to his appointment, he had established a domicil in Washington, to which he intended to return on completion of his engagement in Chicago. On the evidence of his intention to return, the jury found against him; but, assum-

ing that he had such intention, it can avail him little in the
light of the authorities cited. The residence he had established
here he separated from the domicil, and carried with him to
Chicago. No residence remained during his absence, for he
left no place of abode in Washington. His intention to return
could be said, at most, to have held the domicil, and, perhaps,
a legal residence, here, while he was in fact residing in Chicago.
Before leaving Washington, his domicil and his residence had
been the same, and therefore they may be said to have been
synonymous terms. After leaving, his domicil and his residence
were not the same. The situation had changed. The terms
could no longer be said to be synonymous. His domicil was in
Washington; his residence in Chicago. All that was necessary
to transfer the domicil to Chicago would have been his intention
to permanently remain there. That intention, in conjunction
with the residence already established there, would have trans-
ferred the domicil to Chicago, and again the terms would have
become synonymous; or the transfer of the residence back to
Washington in November, 1912, or March, 1913, coupled with
the intention to remain here, would have accomplished the
same result. But it is apparent that, during the residence in
Chicago, there was no residence in Washington in the sense of
a real place of abode.

We conclude, therefore, that a person may have a domicil in
one place and live and abide in another, and while his domicil
in that instance may be called his constructive or legal residence,
it is not in fact his place of abode. Of course, residence,
domicil, legal and constructive residence, may all be in the same
place,—the real place of abode; and that, we think, is the sort
of residence Congress had in mind when it embodied in the
statute the requirement of actual residence as a qualification
for appointment to the office of civil commissioner.

The court submitted to the jury by proper instructions the
question of whether or not respondent, when he removed from
Washington to Chicago, had an intention to return to Wash-
ington. In summing up on this branch of the case the court
instructed the jury as follows: "If you find that he had the

intention to return, if he had established this bona fide residence here, and when he went away intended to return, then, so far as that point is concerned in reference to his absence, he would be entitled still to be considered a citizen of the District of Columbia, a resident of the District of Columbia." The court then instructed the jury that they would also have to determine whether or not, during the period of respondent's absence, he retained an actual residence in Washington, as required by the statute. This branch of the case was summed up in the following instruction: "If you find that Mr. Newman has not been an actual resident of the District of Columbia within the rules I have laid down to you, for three years next prior to his appointment, the form of your verdict should be that 'the defendant is guilty of the act of usurping the office of commissioner of the District of Columbia.' If you find he has been such actual resident for the three years prior to his appointment, the form of your verdict should be that he 'is not guilty of the act of usurping the office of commissioner of the District of Columbia.' " The jury found against respondent generally, or, at least, that he had not been an actual resident of the District of Columbia for three years prior to his appointment. Reducing the verdict to a finding on the question of actual residence alone, respondent's intention to return becomes unimportant, except in so far as it affects actual residence.

The general terms "residence" and "domicil" are of little importance here, since Congress has used the restricted term "actual resident." While there are authorities holding that residence and domicil are regarded as synonymous terms, our attention has been directed to no case where the terms "actual residence" and "domicil," when referring to different locations, were held to be synonymous. The statute imposes two limitations upon the appointing power in the selection of civil commissioners: First, a person to possess the legal qualifications for appointment shall have been an actual resident of the District for three years preceding his appointment; and, second, he shall not have claimed residence elsewhere. The restricted term "actual resident" is used to define his qualification, and

the general limitation, "shall have, during that period, claimed residence nowhere else," to define his disqualification. It follows that, though a person may have been an actual resident of the District for three years preceding his appointment, but claimed residence or domicil or legal residence outside of the District, he falls within the disqualifying clause of the statute. The converse must also be true that, if he merely claimed a domicil or legal residence in the District during the required period, and during the period, or a portion thereof, maintained an actual residence or place of abode outside of the District, made necessary, as in this instance, by business engagements at such place of abode, he cannot measure up to the qualifications required by the statute. Assuming that respondent did not claim residence elsewhere, there still remains the statutory requirement that he shall have actually resided in the District of Columbia for three years prior to his appointment.

The word "actual" is defined as "something real, in opposition to constructive or speculative, something existing in act." 1 Bouvier's Law Dict. p. 89. It is also defined as "real, present, visible, existent, existing in act." 1 Corpus Juris, 1182, and cases cited. Applying these definitions to the term "actual resident," used in the statute, it means that a person, to meet the requirement, must be a resident, residing in fact within the District, and not residing therein merely in contemplation of law.

In *Tipton* v. *Tipton*, 87 Ky. 243, 8 S. W. 440, the statute under consideration provided: "The plaintiff, to obtain a divorce, must allege and prove, in addition to a legal cause of divorce (1), a residence in this State for one year next before the commencement of the action." The court construed this statute to require an actual residence within the State, and, speaking of the difference between legal and actual residence, said: "As contradistinguished from his legal residence, he may have an actual residence in another state or country. He may abide in the latter without surrendering his legal residence in the former, provided he so intends. His legal residence, for the purposes above indicated, may be merely ideal,

but his actual residence must be substantive. He may not actually abide at his legal residence at all; but his actual residence must be his abiding place."

In *Fitzgerald* v. *Arel*, 63 Iowa, 104, 50 Am. Rep. 733, 16 N. W. 712, the court was considering the construction of a statute which provided that in certain cases justices of the peace should not have jurisdiction over *actual* residents of another county. Distinguishing between an actual and a legal resident, the court said: "Proceeding, then, with our inquiry, we have to say that it does not necessarily follow that the defendant was an actual resident of Des Moines county because his domicil was in that county. Residence and domicil are not necessarily the same. 2 Kent, Com. 431, note; *Love* v. *Cherry*, 24 Iowa, 204; *Cohen* v. *Daniels*, 25 Iowa, 88. In the latter case, Beck, Justice, said: 'The distinction between the import of the terms 'residence' and 'domicil' is obvious. The first is used to indicate the place of dwelling, whether permanent or temporary; the second, to denote a fixed, permanent residence to which, when absent, one has the intention of returning.' The distinction here noted is the same as is sometimes made between actual residence and legal residence or inhabitancy. In *Crawford* v. *Wilson*, 4 Barb. 522, the court said: 'The actual residence is not always the legal residence or inhabitancy of a man. A foreign minister actually resides, and is personally present, at the court to which he is accredited, but his legal residence or inhabitancy and domicil are in his own country.' See also, in this connection, *Shelton* v. *Tiffin*, 6 How. 185, 12 L. ed. 397, and 2 Parsons, Contr. 578. In our opinion, whenever a man buys or hires a house and sets up housekeeping with his family, with the design of remaining there until he has completed a certain job of work, he becomes an actual resident of that county within the meaning of the statute in question, and that, too, notwithstanding his domicil may be in another county, to which he intends to return upon the completion of the job."

In *Lawson* v. *Adlard*, 46 Minn. 243, 48 N. W. 1019, Adlard, residing and domiciled in Minnesota, moved with his family into South Dakota, where he had engaged to do certain govern-

ment work, which required fourteen months for its performance. The family residence was left behind, with a portion of the household effects locked in it. A tenant occupied the first story of the house for six months. Adlard and members of his family returned occasionally for the night or for a short stay during the day. He, however, had rented a house in which they lived in South Dakota. In sustaining a writ of attachment against Adlard, issued on the ground of nonresidence, the court held that, while his domicil and legal residence still remained in Minnesota, his actual residence was in South Dakota. "It was the abiding place, the home of the family." In other words, it was his real abode, his residence in act and in fact, as distinguished from his constructive or legal residence or domicil in Minnesota. Actual residence, therefore, may be defined as a person's present place of abode, where he in fact and in act lives; his home, where he has a real, and not a constructive, existence.

While each case must be decided largely upon its own merits, considering the statutory requirements and the facts attending the particular case, our attention has been called to no statute prescribing the qualifications of a person for appointment or election to an office where the restrictions are so great as here. It requires not merely a residence, which it might be contended means only a domicil, a legal or a constructive residence, but it requires *actual residence*. Every reason exists for this restrictive statute. As to most officers in the District, there is no such limitation placed upon the appointing power; they may be selected from the country at large; but the commissioners are the chief executive and administrative officers of the District, and they also legislate for the District in those matters specially delegated by Congress. It was therefore important to provide some limitation upon the appointing power, which would insure the selection of men for this position who had resided in the District long enough to become acquainted with its needs and affairs. To what does the contention of respondent logically lead? If actual residence means mere domicil or legal residence established by sixteen months' habitation in Washington, con-

tinued thereafter for a lapse of sixteen or twenty months by
the mere intention of the party to return, the same mental con-
cept might hold domicil or legal residence for three, ten, or
thirty years; for time in retaining domicil, so long as the inten-
tion to return exists, is not material. This would defeat the
evident intent of Congress. It would foist upon the people of
the District a person totally unacquainted with its affairs. If
the will of Congress is to be thus ignored, better appoint a
person coming under the second limitation of the statute, who
had actually resided here for three, ten, or thirty years, but
who had claimed residence elsewhere. In the latter violation,
the public good, at least, would be better subserved.

Congress must be imputed with knowledge of the fact that
Washington is at all times inhabited by a large population who
maintain their legal residences or domicils in the States from
which they respectively came. This is true largely of the vast
army of Federal office holders. We think the intent of Con-
gress, therefore, to be that a person appointed to the office of
civil commissioner shall have, for three years, at least, prior to
his appointment, lived and had his home within the District.
Of course, this would not restrain him from leaving the Dis-
trict temporarily on business or pleasure; but he must have at
all times a fixed abiding place to which he returns, and which
is in fact his home.

It will be observed that, in considering the law of the case,
we have conceded to respondent all that the evidence, in its
most favorable aspect, implies. The issues of fact, however,
were submitted to the jury by ample instructions. It was left
to the jury to determine from the evidence whether or not
respondent, when he left Washington to go to Chicago, had a
definite intention to return. In determining this fact, the jury
had before it evidence from the lips of respondent that no place
of abode was left behind; what he did toward establishing a
fixed place of abode in Chicago; the character of work in which
he was engaged; the fact that prior to coming to Washington
in 1911 he had not remained in one place for any great length
of time, and the circumstances attending his residence in Chi-

cago. It was also left for the jury to determine from the evidence whether respondent retained such an actual residence in Washington during the entire three years prior to his appointment as would meet the requirements of the law as given it by the court. The verdict was against respondent. Hence, upon the issues of fact and the reasonable inferences to be drawn therefrom, it is conclusive so far as this court is concerned.

The judgment is affirmed, with costs.

Mr. Chief Justice SHEPARD dissenting:

I am compelled to dissent from the judgment affirming this cause. The evidence plainly shows that Oliver P. Newman established his home or residence in the city of Washington in March, 1910, occupying an apartment with his family until July, 1911. He owned no dwelling house in the city, but his intention was to make Washington his permanent residence. He was a newspaper reporter and correspondent, and in July, 1911, was employed by a newspaper union to travel the country in its service, with headquarters at Chicago.

When employed, it was in the contract that he should, on finishing the Chicago work, be given employment by the same company in Washington. Before accepting the Chicago employment he expressed his intention to several persons who were interested in him, to return to Washington and retain his permanent residence there.

During his absence he was accustomed to travel in the Western States, doing work for the newspaper union. He was at Baltimore during the Democratic Nominating Convention, and was afterwards assigned to Princeton and Seagirt, where the Democratic nominee resided.

November 15, 1912, he sent his family to Washington, and went to Bermuda with the President-elect, who took a vacation there. He remained with the President-elect until March 4th, when he came to the Shoreham Hotel, taking an apartment assigned to him there by his employer.

Immediately after the inauguration he went to Chicago,

closing up his affairs there, and then the agreement by which he was to return to Washington was carried out. He returned, and, with his family, has remained here since. He never intended to take up a permanent residence in Chicago, or Princeton, or Seagirt.

This original location in Washington constituted his residence or home, and his intention to remain there permanently was fixed. Dicey, in his admirable treatise on the "Conflict of Laws," page 61, says: "As a home is acquired by the combination of actual residence (*factum*) and of intention of residence (*animus*), so it is (when once acquired) lost or abandoned only when both the residence and the intention to reside cease to exist."

He again says, on page 111: "If the intention permanently to reside in a place exists, a residence in pursuance of that intention, however short, will establish a domicil."

This doctrine, of actual residence, however short, with intention of remaining permanently, is the test of residence according to all the authorities. See *Mitchell* v. *United States*, 21 Wall. 351, 353, 22 L. ed. 587, 588. Here it is said: "A domicil once acquired is presumed to continue until it is shown to have been changed. Where a change of domicil is alleged, the burden of proving it rests upon the person making the allegation. To constitute the new domicil two things are indispensable: First, residence in the new locality; and second, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicil for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject."

The requirement of actual residence in the city does not add anything new. It surely could not have been intended by actual residence that a person should acquire a home in the District of Columbia, and remain in the District continuously until the expiration of the three years.

It is conceded that a person making his home in the District may be permitted to leave the District during the three years. It ought to make no difference that a person taking up his residence has not acquired an actual dwelling house, but, instead, is compelled to establish himself in an apartment. The actual residence, when once acquired with the intention to remain, is all that is necessary.

The court, in my opinion, should have instructed the jury to return a verdict for the defendant. Wherefore I believe the judgment should have been reversed.

A petition for a writ of error to the Supreme Court of the United States was denied by the Court of Appeals on January 15, 1915.

On January 20, 1915, a writ of error was allowed by the Chief Justice of the Supreme Court of the United States and thereafter that Court reversed the judgment of this Court and remanded the cause with directions to dismiss the petition for the writ of *quo warranto.* See — U. S. —.